**COMPOSITE EXHIBIT A.1**



## MASTER LOAN AGREEMENT 009-102417 USD

**THE MASTER LOAN AGREEMENT** with the following number and identification code 009-102417 USD between Prudent Investment Fund SICAV SIF – Diversified Corporate Lending Fund and Technocon International LLC and regulates the terms and conditions outlined below by and between:

(A)　　On one hand: Prudent Investment Fund SICAV SIF with registered office at 2 Boulevard de la Foire, Luxembourg L-1528, Luxembourg, represented by its Board of Directors, hereafter referred to as the "LENDER",

(B)　　On the other hand: Technocon International INC (Alliance Metals), head-quarted at 1111 Kane Concourse, 518 Bay Harbor Island, 331 54 Florida, USA with the following FEI Number: 65-0542741 and Florida Document Number of P94000091060. "BORROWER",

**WHEREAS** the Lender and the Borrower have agreed that the Lender will finance the transactions in loan receivables or other financing instruments or any profit participation arrangement directly or indirectly executed by the Borrower in the aggregate amount specified in Section 2 pursuant to the terms and conditions of this Agreement. The Lender has the right to send any partial amount at any time convenient for the Lender to the account of the Borrower;

**WHEREAS** in consideration for this Loan, the Borrower will procure the delivery to the Lender of third party security in accordance with the provisions of Section 6 of this Agreement;

The Lender and the Borrower are hereinafter referred to together as the "Parties" and each individually as a "Party".

**NOW THEREFORE,** the parties hereto agree as follows:

**Section 1 – Definitions**

Wherever used in this Agreement, the terms below shall have the following meanings;

a)　　**"Confidential Information"** means any information that the Borrower has furnished or wll furnish to the Lender according to this Agreement, but does no include any such information that is or becomes generally available to the public (other than as a result of a breachy by the Lender of its obligation hereunder) or



that is or becomes available to the Lender from a source other than the Borrower

b)    **'Effective Date"** is when the money is received by the borrower;

c)    **"USD"** shall mean the lawful currency of the United States of America;

d)    **"Loan" or "Master Loan Agreement"** shall have the meaning ascribed to it in Section 2 hereof;

e)    **"Payment Date"** means any day and date between date of signing this document until the loan is fully repaid after the Effective Date upon which the Loan (together with accrued interest) shall have been repaid in full by the Borrower.

f)    **"Term"** means December 31 of each year.

g)    **"Extentions and rollover of the Master Loan Agreement"** means the express renewal of the Master Loan Agreement for an additional 12 months period as of the Term by a written confirmation from the Lender to the Borrower executed 10 day before the end of the Term.

Words importing the singular include the plural and vice versa and the neuter gender shall include the feminine and masculine genders.

### Section 2 - Agreement for the Loan

Subject to the terms and conditions of this Agreement the Lender agrees to finance loan receivables to the Borrower and the Borrower agrees to become the debtor of the Lender, for an aggregate amount of USD five million dollars, USD 5,000,000. This amount can be made available by the Lender to the Borrower in one or multiple transfers to either of the accounts indicated in this Master Loan Agreement.

### Section 3 - Interest Rate

Any amount received under the Master Loan Agreement shall bear annual interest in USD of seventeen percentage points (17.0%) until the Loan is either repaid, withdrawn or extended by the respective parties prior to such date.

### Section 4 - Disbursement of the Loan and Banking Details

Disbursement of the Loan will be executed by the Lender from the same that the interest should be repaid to by the Borrower. The Lender holds its bank account at ABN AMRO Bank in Luxembourg (see information below). The Borrower holds its accounts at Bank in America in Florida, USA. The wires of the USD loan or interest payments shall be executed to the following accounts:



**Lender/Investor**

| | |
|---|---|
| USD Correspondent details | NAME: BANK OF AMERICA NA, NEW YORK<br>SWIFT / BIC: BOFAUS3N |
| Beneficiary Bank | NAME: ABN AMRO BANK (Luxembourg) S.A.<br>SWIFT/ BIC: BIC: ABNALU2A |
| Account details of the Fund | NAME: PRUDENT INVESTMENT FUND S.A. SICAV SIF<br>IBAN: LU91 3550 1115 1784 0002 |

**Borrower**

**Any transfers from the Lender to the Borrower should be paid to the following account:**

| | |
|---|---|
| Name of Bank | Bank of America, USA |
| SWIFT | BOFAUS3N |
| ABA | 026009593 |
| Beneficiary Name | Alliance Metals |
| Account Number | 898075461488 |

## Section 5 - Payment of the Loan

a)    Interest Payment Date: A date when the Borrower shall pay the Lender the interest owed as per specific request at such time by the Lender. The Lender may request a partial or full payment of Interest owed up to such Interest Payment Date as determined by the Lender as per the terms of this loan agreements. Each payment will take place within 72 hours after receiving a payment demand for the interest amount due from the Lender. Such payments shall be made to the account indicated by the Lender in this document.

b)    Principal Payment Date: The Borrower may prepay and the Lender may request a partial or full repayment of the Loan in accordance to the loan agreements as early as the Borrower or Lender chooses. The Lender should be given advance notice of at least seven (7) Business Days if the Borrower decides to repay any portion of the principal amount earlier then at the end of the calendar year period as of the Effective Date.  The loan is fully repayable at the end of the term unless the Lender gives the Borrower a written notice ten (10) days before the end of the one year term of a one year extention and rollover. The loan can then be renewed for a period of one year with the same terms and conditions as in this loan agreement.



The Borrower should be informed weekly, by any business Thursday in Luxembourg, of any such request of repayment of any part of the principal amount and the associated interest linked to this specific withdrawal request. The Borrower shall upon receiving such repayment request initiate a transfer within ten (10) days following the date of the withdrawal request. Such payments should be made to the account indicated by the Lender in this document.

c)      All sums payable to the Lender hereunder shall be paid free and clear of any withholding taxes.

**Section 6 - Duration**

This agreement shall enter into force on the date hereof and is concluded for a fixed period ending at December 31 of the year of the signed Agreement. The Agreement may be renewed for additional 12 month periods of time by an extention of the Master Loan Agreement.

Each 1 year extention of the Master Loan Agreement shall be executed by a written confirmation from the Lender to the Borrower executed 10 days before the end of the Term.

**Section 7 – Representations and Warranties**

a)      Both of the parties hereto represent and warrant to the other party as follows:

(i)      Both parties have the full power and authority and have taken all action necessary to execute and deliver this Agreement and to fulfil their obligations hereunder, and to consummate the transactions contemplated by this Agreement;

(ii)     The making and performance of this Agreement and all documents executed and delivered and required to be executed and delivered hereunder do not and will not violate any law or regulation of the jurisdiction of its incorporation or any other law or regulation applicable to either of them;

(iii)    This Agreement has been duly executed and delivered by either party and constitutes their legal, valid and binding obligation, enforceable in accordance with its terms.

(iv)     All consents, licenses, approvals, authorisations, registrations (including filling this agreement with any required governmental agencies), filings, opinions and declarations from or with any agency, department, administrative authority, statutory corporation, or judicial entity necessary for the validity or enforceability of their respective obligations under this Agreement have been obtained and no governmental authorisations other than any already obtained are required in connection with the execution, delivery and performance of this Agreement.



b)     The Borrower further represents and warrants to the Lender that on and as of the Effective Date the Borrower is not aware of any defence to payment arising out of any act or omission of the Borrower, or any right of offset or counterclaim against the Borrower.

## Section 8 - Events of Default

8.1     (a) If:

(i)     The Borrower fails to pay any sum due from it hereunder at the time, in the currency and in the manner specified herein; or

(ii)     Any representation or statement made by the Borrower in this Agreement or any notice or other document, certificate, or statement delivered by it pursuant hereto or in connection herewith is or proves to have been incorrect or misleading when made; or

(iii)     The Borrower fails duly to perform or comply with any of the obligations expressed to be assumed by it in this Agreement; or

(iv)     The Borrower fails duly to perform or comply with any other obligation expressed to be assumed by them in this Agreement and such failure is not remedied within seven (7) business days after the Lender has given notice thereof to the Borrower; or

(v)     Any indebtedness of the Borrower is not paid when due, or any indebtedness is declared to be or otherwise becomes due and payable prior to its specified maturity or any creditor of the Borrower becomes entitled to declare any indebtedness due and payable to its specified maturity; or

(vi)     The Borrower is unable to pay its debts as they fall due, commences negotiations with any one or more creditors with a view to the general readjustment or rescheduling of its indebtedness or makes a general assignment for the benefit of or a composition or arrangement with its creditors; or

(vii)     The Borrower is declared bankrupt; or

(viii)     The Borrower repudiates this Agreement or does or causes to be done any act or thing evidencing an intention to repudiate this Agreement;

(b) THEN the Lender may:

(i)     Declare the Loan to be immediately due and payable (where upon the same shall become so payable together with interest accrued due thereon), and/or

(ii)     Declare that the Loan shall be cancelled, whereupon the same shall be cancelled.



8.2    If, pursuant to Section 7.1, the Lender declares the Loan to be due and payable on the demand of the Lender, then, and at any time thereafter, the Lender may, by written notice to the Borrower, call for repayment of the Loan on such date as the Lender may specify in such notice whereupon the same shall become due and payable on such date together with any other sums then owed by the Borrower hereunder. The Lender also has priority over the equity investors in any future bankruptcy process in regards to receiving the repayment of what is owed to the Lender in accordance to the terms of this agreement.

## Section 9 - Assignment

This Agreement shall bind and inure to the benefit of the respective successors of the parties hereto, except that the Borrower may not assign or otherwise transfer all or any parts of its rights or obligations under this Agreement without the prior written consent of the Lender.

## Section 10 – Remedies and waivers, partial invalidity

No failure to exercise, nor any delay in exercising, any right or remedy under this agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy prevent any further or other exercise thereof or the exercise of any other right or remedy. the rights and remedies provided herein are cumulative and not exclusive of any rights or remedies provided by law.

If, at any time, any provision of this agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions thereof nor the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby.

## Section 11 – Taxes and other deductions

Alls sums payable by the Borrower under this Agreement shall be paid free and clear of an (except to the extent required by the law) without any deduction or withholding for or on account of any present or future taxesm duties, fees or charges of any nature now or hereafter imposed by Luxembourg or any other country, any political subdivision or taxing authority thereof or any federation or organization.

## Section 12 - Counterparts

This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same agreement.



### Section 13 - Applicable Law

This Agreement is exclusively subject to the laws of the Grand-Duchy of Luxembourg.

### Section 14 - Jurisdiction

Exclusive jurisdiction is given to the Courts of the Grand-Duchy of Luxembourg and any claims arising under the present Agreement must be submitted to the Courts of Luxembourg, City.

### Section 15 – Notice

All notices, advice, statements, requests, demands and other communications ("**Notices**") under this Agreement shall be made in the English language and shall be given or made to the other Party in writing or- but then, except for routine notices, to be confirmed in writing - by facsimile and shall be addressed to them at the addresses below:

**Lender:**          **Address**
                     As indicated earlier in this agreement

**Borrower:**        As indicated earlier in this agreement



**IN WITNESS WHEREOF** the Parties to this Agreement have caused this Agreement to be duly executed and signed, in as many original copies as there are Parties to this Agreement, each Party declaring having received one original copy.

**The Lender**
By: Dennis Klemming
Capacity: Chairman

**The Borrower**
By: Larry Gitman
Capacity: Vice President

**The Lender**
By: Giovanni Cataldi
Capacity: Board Member

**The Borrower**
By: Jacob Gitman
Capacity: President

# COMPOSITE EXHIBIT A.⬚

**OPERATING AGREEMENT FOR DISBURSEMENT OF FUNDS**
009-123118 USD

By this agreement:

(i)     **PRUDENT INVESTMENT FUND SICAV SIF**, (Prudent Investment Fund: Prudent Diversified Corporate Lending Fund) with registered office at 2 Boulevard de la Foire, Luxembourg L-1528, Luxembourg, herein represented by its Directors named and signed below (hereinafter referred to simply as "PIF", "Investor" or "Lender");

(ii)    **TECHNOCON INTERNATIONAL INC (ALLIANCE METALS)**, limited liability company headquartered at 1111 Kane Concourse, 518, Bay Harbor Island, Florida 33154, United States, with the following FEI Number: 65-0542741 and Florida Document Number of P94000091060, herein represented by its statutory administrators named and signed below (hereinafter referred to simply as "Alliance Metals" or "Borrower" and, together with PIF, the "Parties");

WHEREAS:

a.      PIF wishes to make a certain amount of monies, funds and financial resources available to Alliance Metals through loans or capital injections into certain investment platforms and funds advised by Alliance Metals (the "Disbursements"); and

b.      the Parties want to regulate the options, rules and conditions applicable to such disbursements.

HAVE AGREED TO EXECUTE THE PRESENT 'OPERATING AGREEMENT FOR DISBURSEMENT OF FUNDS' (the "Agreement"), WHICH WILL BE GOVERNED BY THE FOLLOWING CLAUSES AND CONDITIONS, AND SUPERCEDES ANY AND ALL PRIOR DOCUMENTS AND AGREEMENTS, SUCH AS 'MLA 009-123117 USD', RELATING TO ANY LOAN ARRANGEMENTS BETWEEN THE PARTIES:

## ARTICLE 1.     DEFINITIONS

In this Agreement and its Exhibits, the following expressions, except where there is a specific provision to the contrary or where the context otherwise requires, have the following meanings:

"Advance"                       means any amount, limited to the Facility amount, drawn by the Borrower in accordance with the provisions of this Agreement.

"Business Day"                  means any day (other than a Saturday or Sunday) on which banks and foreign exchange markets are open in New York and such other place where any payment is required to be made or any act is required to be performed hereunder.

"Date of Drawdown"            means the date on which a drawdown is made pursuant to Article 2 of this Agreement.

"Interest Payment Date"       means the date coincident to each Principal Repayment Date.  In the event that an Interest Payment Date shall be a day that is not a Business Day, then the Interest Payment Date shall be the next succeeding day that is a Business Day.

"Interest Period"             Interest Period means the period commencing on (and including) the applicable Date of Drawdown and ending on (but not including) the first Interest Payment Date thereafter, and then each succeeding period commencing on (and including) the last day of the preceding Interest Period and ending on (but not including) the next succeeding Interest Payment Date.

"Facility"                    means the aggregate amount of Disbursements made available by Lender to Borrower according to this Agreement, as described in item 2.2 of this Agreement.

"Principal Repayment Dates"   means the repayment dates specified as such by the Borrower in the Notice of Drawdown.

"Tax" or "Taxes"              shall include all present and future taxes, levies, imposts, duties, charges, fees, deductions and withholdings and any restrictions or conditions resulting in a charge.

"Term"                        means that the Master Loan Agreement will expire on December 31, 2019.

For the purpose of this Agreement all interest, charges and so forth will be computed on the basis of a year of 360 days and the actual number of days elapsed.

## ARTICLE 2.    DISBURSEMENT OPTIONS

1.    The Parties hereby agree that, as mutually accepted between the Parties in each applicable case, the Disbursements may take place through (i) direct loans from the Lender to the Borrower ("Loans"), (ii) direct investments from PIF into credit rights investment funds or other kind of investment funds or platforms, in all cases serviced and/or advised by ALLIANCE METALS ("Investments"), or (iii) any other financial arrangement mutually defined in written by the Parties.

2.    The Disbursements shall have a maximum aggregate amount of US$ 5,000,000.00 (five million] United States Dollars) ("Facility"), considering all Disbursements made according to the alternatives described under item 2.1 above.

**ARTICLE 3.    LOANS**

1.     In case of any Disbursement to be made through Loans, Lender grants to the Borrower, who declares to have accepted from Lender, an advised and uncommitted credit in the amount of the Facility, which shall be subject to the terms and conditions set forth in Exhibit A hereto.

**ARTICLE 4.    INVESTMENTS**

1.     Any and all Disbursements made through Investments shall be implemented and completed upon direct capital injections effected by PIF into credit rights investment funds or other kind of investment funds and platforms specifically agreed upon by the Parties.

2.     Each such Investment shall be made in compliance with the Federal Reserve and evidenced through the execution, by PIF and/or its local representative, of the relevant subscription note (*Boletim de Subscrição*) or corresponding document related to the respective fund being invested in, according to the applicable regulation.

**ARTICLE 5.    TAXES**

The Borrower shall pay all taxes, if any, which will be levied as withholding tax and which Lender can't set off as advance levy with taxes due by other reasons, as well as the costs of the enforcement of this Agreement. Costs of enforcement include the costs of legal assistance incurred.

**ARTICLE 6.    COMMUNICATIONS AND NOTICES**

All notices and communications made hereunder by either party to the other, shall be in writing in the English language, by email or by telefax or be confirmed in writing at addresses stated at the opening of page 1 if so requested by the counterparty, or to such other addresses as may from time to time be notified in writing by either party to the other.

**ARTICLE 7.    MISCELLANEOUS**

1.     In respect of this Agreement and its implementation the Borrower irrevocably waives to the extent possible any claim it may now or at any time have to immunity of any kind as to court or arbitration proceedings and the enforcement of any awards, sentences, judgments, injunctions, decrees or court orders legally given or made in connection with such proceedings.

2.     No failure to exercise and no delay in exercising, on the part of Lender, any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege preclude any other or future exercises of any other right, power or privilege. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law.

3.    All payments to be made by the Borrower under this Agreement shall be made to Lender in United States Dollars at the account, which Lender may from time to time indicate. These payments made by the Borrower hereunder are considered to be firstly for costs and expenses, then for penalty fee, and default interest, if this is the case, and, lastly, for interest and principal, in that order.

4.    The accounts of Lender shall be prima facie evidence of any amount, which the Borrower may owe from time to time to Lender pursuant to this Agreement, except in case of manifest error.

5.    The Borrower is not entitled to assign any of the rights or obligations arising out of this Agreement.

6.    Lender shall at all times be entitled to set-off all and any claims the Lender group has on the Borrower under this Agreement against any counterclaims of the Borrower.

7.    This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same agreement.

8.    This Agreement is subject to the laws of United States and, to the extent possible without conflicting with American laws, to the laws of the Grand-Duchy of Luxembourg. Jurisdiction is given to the Courts of the State of Florida, United States, and any claims arising under the present Agreement must thus be submitted to the Courts of the State of Florida, United States.

9.    This Agreement shall become effective when executed and delivered by Lender and the Borrower, and shall be binding in all respects upon the parties and their respective successors.

IN WITNESS WHEREOF the parties hereto, acting through their duly authorized representatives, have executed this Agreement on December 14, 2018, superseding and replacing for any and all legal purposes all prior documents and agreements, either in written or not, relating to this loan arrangement between the parties.

Lender:

**PRUDENT INVESTMENT FUND SICAV SIF**

By: Dennis Klemming / Alfred Neimke

Borrower:

**TECHNOCON INTERNATIONAL INC (ALLIANCE METALS)**

By: Jacob Gitman / Larry Gitman

Witnesses:

1. _____

Name:

I.D.:

2. _____

Name:

I.D.:

**Exhibit A**

## MASTER LOAN AGREEMENT 009-123118 USD
## TERMS AND CONDITIONS

**1.    DRAWDOWN AND PURPOSE**

1.    Subject to the provisions of the Agreement, the Borrower has the right to request to borrow Advances in the maximum aggregate amount of the Facility, after Lender has received a notice from the Borrower ("Notice of Drawdown"), in conformity with Exhibit B hereto (by email or telefax or be confirmed in writing if so requested by the counterparty), indicating the proposed Date of Drawdown, the amount of the Advance and the Interest Period, which notice, once given, shall be binding and irrevocable.

3.    The Facility will be available to the Borrower throughout the term of the Agreement. The amount of any Advance shall not exceed the Facility amount, considering all Disbursements made under the Agreement.

**2.    INTEREST**

1.    Any Loan amount received under the Agreement shall carry an adjustable annual interest as per the following terms:

A)    A fixed simple annual interest in USD of seventeen per cent (17%) until the Loan is repaid, canceled or extended. This monthly interest may be reset to a higher level upon mutual agreement between Lender and Borrower on the last Luxembourg Banking Friday of each calendar month.

B)    The interest will be calculated on the principal and also on the accumulated interests for NAV purposes.

2.    Interest shall be payable on each Interest Payment Date.

3.    If any Interest Payment Date would fall on a day which is not a Business Day then such interest period shall be extended to the next succeeding Business Day unless such Business Day falls on another calendar month, in which case such interest period shall end on the immediately preceding Business Day.

**3.    REPAYMENT**

1.    Interest Payment Date: A date when the Borrower shall pay the Lender the interest owed as per specific request at such time by the Lender. The Lender may request a partial or full payment of Interest owed up to such Interest Payment Date as determined by the Lender according to the terms of this Agreement. Each payment will take place within 72 hours after receiving a payment demand for the

interest amount due from the Lender. Such payments shall be made to the account indicated by the Lender in this document.

2.      Principal Payment Date: The Borrower may prepay and the Lender may request a partial or full repayment of the Loan in accordance to the loan agreements as early as the Borrower or Lender chooses. The Lender should be given advance notice of at least seven (7) Business Days if the Borrower decides to repay any portion of the principal amount earlier then at the end of the calendar year period as of the Effective Date. The Loan is fully repayable at the end of the term unless the Lender gives the Borrower a written notice ten (10) days before the end of the one-year term thus causing an extension. The loan can then be renewed for a period of one year with the same terms and conditions as in this loan agreement.

3.      Any repayment that is received by the Lender in accordance with items 1 and 2 above is first categorized as an interest payment against the outstanding loan amount of this Agreement and subsequently as a payment against the principal notional amount outstanding against this Agreement, as per the applicable Call Notice Request Form, according to Exhibit C hereto.

4.      The Borrower should be informed weekly, by any business Thursday in Luxembourg, of any such request of repayment of any part of the principal amount and the associated interest linked to this specific withdrawal request. The Borrower shall upon receiving such repayment request initiate a transfer within ten (10) days following the date of the withdrawal request. Such payments should be made to the account indicated by the Lender in this document.

5.      All sums payable to the Lender hereunder shall be paid free and clear of any withholding taxes.

6.      The Facility is not revolving. Any amount repaid to Lender may not be re-borrowed.

7.      All payments shall be made on the Interest Payment Dates and Principal Payment Dates, as applicable, no later than at 12:00 noon (Florida, United States time) in lawful currency of the United States of America (in freely transferable United States Dollars), in immediately available same day funds, through the closing of a currency exchange agreement for credit to the following account of Lender (or at such other place or bank account as may be notified by Lender):

| | |
|---|---|
| USD Correspondent details | NAME: BANK OF AMERICA NA, NEW YORK |
| | SWIFT / BIC: BOFAUS3N |
| Beneficiary Bank | NAME: ABN AMRO BANK (Luxembourg) S.A. |
| | SWIFT/ BIC: BIC: ABNALU2A |
| Account details of the Fund | NAME: PRUDENT INVESTMENT FUND S.A. SICAV SIF |
| | IBAN: LU91 3550 1115 1784 0002 |

## 4.    CONDITIONS PRECEDENT

1.      The obligations of Lender hereunder are subject to the condition that Lender shall have received, in a form and substance satisfactory to it, prior to the first loan disbursement:

a.    Certified copies of the Borrower's incorporation documents including all amendments thereto;

b.    Copies of all resolutions, authorizations, approvals, consents, licenses and legislation, if any, necessary or appropriate for entering into and performance under the Agreement by the Borrower; and

c.    A copy of the signatures of those persons authorized to execute this Agreement on behalf of the Borrower and of the persons authorized to sign or dispatch all notices, certificates and other documents on behalf of the Borrower in connection with this Agreement.

2.    Borrower shall, at its own expense, provide for the translation into English, by a sworn translator, of all documents mentioned above which may not be directly written and issued in the English language, and shall have the same delivered to Lender upon request of the Lender.

## 5.    **REPRESENTATIONS**

The Borrower represents to Lender, prior to signing of this Agreement and prior to the drawing under the Facility, that:

a.    The Borrower has been validly incorporated and is validly existing under the laws of the United States of America and has all requisite corporate powers to carry on its business.

b.    The Borrower has all power and have obtained all the necessary approvals to enter into and perform its obligations under this Agreement and will take all the necessary actions to obtain, and to maintain valid all authorizations, approvals and consents of and/or registrations with all governmental and regulatory authorities in the United States of America or any political subdivision thereof as shall be necessary or appropriate under the laws thereof in connection with the entrance into and performance of this Agreement by the Borrower.

c.    Borrower is not in breach of or default under any agreement, document or other obligation to which it is a party or by which it is bound and no such agreement, document or other obligation will be contravened by the Borrower entering into this Agreement or by borrowing hereunder or performing any of its obligations hereunder.

d.    No litigation, arbitration or administrative proceedings before or of any court, tribunal or governmental authority is presently pending or, to the best of the knowledge and belief of the Borrower, threatened against the Borrower or any of its respective assets which might adversely affect the Borrower's financial condition or the ability of the Borrower to perform their respective obligations hereunder and no such proceedings is presently pending or, to the best of the knowledge and belief of the Borrower, threatened to enjoin or restrain the execution or performance of this Agreement, or in any manner to question the laws and proceedings under which this Agreement is to be executed, performed or enforced, and none of the said laws and proceedings have been repealed, revoked or rescinded in whole or in part.

e.   The Borrower has filed or delivered all tax returns which it is required by Law to file or deliver and has paid all taxes, assessments, fees and other governmental charges assessed against it or upon any of its properties, assets, income or franchises, and the Borrower is not in default in the payment of any taxes which is not disclosed in the financial statement referred to in paragraph (f) below.

f.   The Borrower's audited financial statements (including the income statement and balance sheet) for the year ended the year prior to the execution date of this Agreement have been prepared on a basis consistently applied and give a true and fair view of the results of its operations for that year and the state of its affairs at that date, and in particular accurately disclose all the Borrower's liabilities (actual or contingent).

g.   There has been no material adverse change in the Borrower's financial condition since the date referred to in paragraph (f) above.

h.   All information furnished by the Borrower in connection with the Facility is true, accurate and correct in all material respects and does not contain any untrue statement, nor omit to state any fact the omission of which makes the statements therein misleading in the light of the circumstances under which they were made, all expressions of expectation, intention, belief and opinion contained therein were honestly made on reasonable grounds after due and careful inquiry by the Borrower, and the Borrower has fully disclosed in writing to Lender all facts relating to the Borrower which the Borrower knows or should reasonably know and which are material for disclosure to Lender in the context of this Agreement.

i.   Each of the above representations and warranties will be correct and complied with in all material respects so long as any sum remains to be lent or remains payable under this Agreement as if repeated then by reference to the then existing circumstances, except that the reference to accounts in paragraph (f) above shall be construed as a reference to the then latest available annual accounts of the Borrower.

## 6.   UNDERTAKINGS/COVENANTS

The Borrower hereby procures towards Lender that, as long as the Facility or any part thereof remains outstanding or any other sum is payable under this Agreement, that:

a.   it will provide Lender with its annual (consolidated if any) audited financial statements, as soon as available and in any event no later than 120 (one hundred and twenty) days after closing of the relevant accounts for the relevant year. Furthermore, the Borrower shall provide Lender with such other information, which Lender may reasonably request from time to time;

b.   the Borrower will promptly (but in any case, no later than three days after it has become aware of such event) notify Lender of the occurrence of an Event of Default and provide Lender with

full details of any steps which it is taking, or is considering taking, in order to remedy or mitigate the effect of the Event of Default or otherwise in connection with it;

c.   the Borrower's obligations hereunder and under each document to be executed by the Borrower hereunder rank and will rank at least *pari passu,* in priority of payment and in all other respects, with all other unsecured and unsubordinated indebtedness of the Borrower;

d.   The Borrower shall also be responsible for procuring the translation of this Agreement into Portuguese by a sworn translator and register such document with a Public Register of Documents of its domicile within 20 (twenty) days of the execution of the same, providing Lender with a registered copy of it;

e.   The Borrower shall not without the prior written consent of Lender and with regard to any other transactions with similar nature, terms and conditions:

   (a)   create or permit to subsist any charge, mortgage, pledge, security interest or any other right of a third party in respect of (i) any of its present or future property, and/or (ii) any of its present or future other assets;

   (b)   sell, barter or otherwise alienate (including, without limitation, through any sale and leaseback and other off-balance transaction) any of its property or other assets, except for a sale or transfer for full value in the normal course of business of assets as mentioned under (a) (ii);

   (c)   guarantee or incur liability in any other way for the obligations and/or debts of third parties, whether due or not due, absolute or contingent; and the Borrower shall procure that none of its present or future subsidiaries or companies in which the Borrower holds or will hold the majority of the shares, will create any security interest or incur liability as described in the first part of this item and that such subsidiaries or companies shall accept the foregoing as their own obligation; and

## 7.   **EVENTS OF DEFAULT**

1.   The total outstanding principal sum of the Loans under the Facility together with accrued interest and any other charges due by the Borrower to Lender under this Agreement will become due and payable, without giving notice or observing any other formality, upon occurrence of any of the following events, in which case the Borrower will no longer be entitled to make any Drawdown under this Agreement:

a.   the Borrower shall default in the due payment of principal, interest, arrangement fee or any other amount payable hereunder on the respective due date;

b.   the Borrower shall default in the due performance or observance of any other provision contained in this Agreement and such default shall not be rectified within a period of 5 (five) days after Lender shall have given the defaulting party written notice of such default;

c.   the Borrower changes, or threatens to change, ceases or threatens to cease business as presently conducted other than in the normal course of business or sells, transfers or otherwise alienates the whole or any substantial part of its property or assets, including revenues, whether by one transaction or a series of transactions, related or not, without the prior written consent of Lender;

d.   the Borrower shall be unable, or admit in writing its inability to pay its debts as they mature, make an assignment for the benefit of creditors, or commit any act of bankruptcy, or any encumbrance takes possession or any order relating to dissolution, liquidation, bankruptcy or insolvency or for the appointment of a liquidator or receiver or judicial administrator or trustee or the levy of any execution shall be passed, commenced or made with respect to it or any of its assets;

e.   any adverse event or change shall have occurred in the economic or financial situation of the Borrower from which Lender shall conclude in its reasonable opinion, after having made the necessary investigations and after having notified the Borrower of the result of such investigations, that the ability of the Borrower to fulfil its obligations under this Agreement has been materially impaired;

f.   if the country in which the Borrower has its principal office announces or enters into rescheduling or restructuring of its debts, unless the Borrower's ability, as the case may be, to service and repay the Facility, shall remain unaffected thereby;

g.   a distress or execution or writ of seizure and sale or attachment is levied upon or issued against any of the property or assets of the Borrower representing a substantial part of such property or asset, which is not discharged within 14 (fourteen) days thereof;

h.   this Agreement, or any provision thereof is or becomes or is claimed to be, for any reason, invalid or unenforceable or at any time it is unlawful or impossible for the Borrower to perform any of its obligations hereunder or it is unlawful or impossible for Lender to exercise any of its rights hereunder;

j.   the change of Borrower's majority control without the prior specific written consent of Lender.

2.   If, pursuant to the above, the Loan becomes fully due and payable, then, and at any time thereafter, the Lender may, by written notice to the Borrower, call for repayment of the Loan on such date as the Lender may specify in such notice whereupon the same shall become due and payable on such date together with any other sums then owed by the Borrower hereunder. The Lender also has priority over the equity investors in any future bankruptcy process in regard to receiving the repayment of what is owed to the Lender in accordance to the terms of this agreement.

3.      In the event that the Facility should become immediately due and payable as aforesaid, the Borrower will indemnify Lender for all losses, costs or expenses incurred by Lender, other than arising from gross negligence of willful misconduct. The determination of Lender (setting forth the basis of computation of such losses) shall, in absence of manifest error, be conclusive.

4.      Borrower expressly and irrevocably agrees with Lender, in view of the provision of item 1.(c) above, that all amounts owed by Borrower to any of the companies belonging to the Lender Group in view of agreements, contracts, obligations or operations other than the present one, regardless of the nature, conditions or original payment term of such other agreements, contracts, obligations or operations, shall also become immediately due and payable in the event of anticipated maturity of this Agreement, and Lender, or the interested company of the Lender Group, may, at its own discretion, take any and all measures deemed necessary to enforce its rights and its/their immediate payments, either against the Borrower, or against any possible guarantors thereto.

## 8.    PLEDGE OF ASSETS

1.      The obligation of the Borrower to repay any Loan to the Lender under this Agreement shall be guaranteed by the pledge of any and all other assets held by the Borrower.

2.      The Borrower hereby undertakes and commits to executing the relevant Quota Pledge Agreement and all other related ancillary pledge documents and agreements, as well as providing for the necessary registrations, signatures and actions within United States, as to make such pledges fully valid and enforceable against the Borrower, upon request in written by the Lender, within the timeframe required by the Lender in said written request.

**Exhibit B**

**NOTICE OF DRAWDOWN**

São Paulo, [____].

**PRUDENT INVESTMENT FUND SICAV SIF ("Lender")**
**PRUDENT DIVERSIFIED CORPORATE LENDING FUND**
2 Boulevard de la Foire
Luxembourg L-1528
Luxembourg,
Attn.:   Mr. Dennis Klemming

Ref:     Notice of Drawdown under the Loan Agreement

Dear Sir,

1.       We refer to article 2.1 of the Operating Agreement for Disbursement of Funds (the "Agreement"), Master Loan Agreement, executed by and between **TECHNOCON INTERNATIONAL INC (ALLIANCE METALS),** and Lender on December 14, 2018. TERMS DEFINED IN THE AGREEMENT ARE USED HEREIN AS THEREIN DEFINED, UNLESS OTHERWISE DEFINED HEREIN.

2.       This is to formally request a DISBURSEMENT to be effected under the terms of the Agreement, as follows:

Amount:                          US [____]
Date of Drawdown:               [____]
Term:                           [____] months
Maturity Date:                  [____]
Interest:                       17% a.a.
Transfer instructions:

| Beneficiary Bank: | Bank of America, USA |
| --- | --- |
| Beneficiary Bank Swift: | BOFAUS3N |
| Beneficiary Name: | ALLIANCE METALS |
| Beneficiary Account Number: | 898075461488 |

IN WITNESS WHEREOF the parties hereto, acting through their duly authorized representatives, have executed this Agreement on December 14, 2018, superseding and replacing for any and all legal purposes all prior documents and agreements, either in written or not, relating to this loan arrangement between the parties.

Lender:

**PRUDENT INVESTMENT FUND SICAV SIF**

By: Dennis Klemming / Alfred Neimke

Borrower:

**TECHNOCON INTERNATIONAL INC (ALLIANCE METALS)**

By: Jacob Gitman / Larry Gitman

Witnesses:

1. _____

Name:

I.D.:

2. _____

Name:

I.D.:

**Exhibit C**

**CALL NOTICE REQUEST FORM**

Luxembourg, [_____].

Reference: PRUDENT DIVERSIFIED CORPORATE LENDING FUND

**LGN INTERNATIONAL LLC ("Borrower")**

1111 Kane Concourse, 518, Bay Harbor Island, 33154
Florida, United States of America

Attn.:   Mr. Jacob Gitman / Larry Gitman

Ref:   Notice of repayment under the Loan Agreement:

Dear Sir,

1.   We refer to article 4.3 of the Master Loan Agreement USD (the "Agreement"), executed by and between **PRUDENT INVESTMENT FUND SICAV SIF** and Borrower on December 14, 2018. TERMS DEFINED IN THE AGREEMENT ARE USED HEREIN AS THEREIN DEFINED, UNLESS OTHERWISE DEFINED HEREIN.

2.   This is to formally request a REPAYMENT to be effected under the terms of the Agreement, as follows:

Currency:                      [____]
Amount:                        [____]
Date of repayment request:     [____]
Bank Details for the Lender:

Name of Correspondent Bank:   Bank of America NA, New York
Correspondent Bank Swift:     BOFAUS3N
Beneficiary Bank:             ABN Amro Bank (Luxembourg) S.A.
Beneficiary Bank Swift:       ABNALU2A
Beneficiary Name:             Prudent Investment Fund S.A. SICAV SIF – Diversified Corporate Lending
Beneficiary Account Number:   LU91 3550 1115 1784 0002

Signed by:

**PRUDENT INVESTMENT FUND SICAV SIF**
(two board members of the Prudent Investment Fund)

# COMPOSITE EXHIBIT A.▢



## MASTER LOAN AGREEMENT 004-123115 USD

**THIS MASTER LOAN AGREEMENT** replaces any previous agreement and regulates the terms and conditions outlined below by and between:

(A)    On one hand: Prudent Investment Fund SICAV SIF with registered office at 2 Boulevard de la Foire, Luxembourg L-1528, Luxembourg, represented by its Board of Directors, hereafter referred to as the **"LENDER"**,

(B)    On the other hand: LGN International LLC, head-quarted at 1111 Kane Concourse, 518 Bay Harbor Island, 331 54 Florida, USA. Registered in Delaware, USA. **BORROWER"**,

**WHEREAS,** the Lender and the Borrower have agreed that the Lender will finance the transactions in loan receivables or other financing instruments or any profit participation arrangement directly or indirectly executed by the Borrower in the aggregate amount specified in Section 2 pursuant to the terms and conditions of this Agreement. The Lender has the right to send any partial amount at any time convenient for the Lender to the account by the Borrower;

**WHEREAS** in consideration for this Loan, the Borrower will procure the delivery to the Lender of third party security in accordance with the provisions of Section 6 of this Agreement;

The Lender and the Borrower are hereinafter referred to together as the "Parties" and each individually as a "**Party**".

**NOW THEREFORE,** the parties hereto agree as follows:

## Section 1 - Definitions

Wherever used in this Agreement, the following terms shall have the following meanings:

a)    **"Confidential Information"** means any information that the Borrower has furnished or will furnish to the Lender according to this Agreement, but does not include any such information that is or becomes generally available to the public (other

Registered Office
2, boulevard de la Foire
L-1528 Luxembourg
Grand-Duchy of Luxembourg

● Luxembourg    ● Miami    ● Sao Paulo

www.PrudentGroup.US





**PRUDENT**
GROUP

than as a result of a breach by the Lender of its obligation hereunder) or that is or becomes available to the Lender from a source other than the Borrower

b)     **'Effective Date"** is when the money is received by the borrower;

c)     **"USD"** shall mean the lawful currency of the United States of America;

d)     **"Loan" or "Master Loan Agreement"** shall have the meaning ascribed to it in Section 2 hereof;

e)     **"Payment Date"** means any day and date between date of signing this document until the loan is fully repaid after the Effective Date upon which the Loan (together with accrued interest) shall have been repaid in full by the Borrower.

f)     **"Term"** means December 31  of each year.

g)     **"Extentions and rollover of the Master Loan Agreement"** means the express renewal of the Master Loan Agreement for an additional 12 months period as of the Term by a written confirmation from the Lender to the Borrower executed 10 days before the end of the Term.

Words importing the singular include the plural and vice versa and the neuter gender shall include the feminine and masculine genders.

### Section 2 - Agreement for the Loan

Subject to the terms and conditions of this Agreement the Lender agrees to finance loan receivables to the Borrower and the Borrower agrees to become the debtor of the Lender, for an aggregate amount of USD twenty million dollars, USD 20,000,000.00. This amount can be made available by the Lender to the Borrower in one or multiple transfers to either of the accounts indicated in this Master Loan Agreement.

### Section 3 - Interest Rate

Any amount received under the Master Loan Agreement shall bear annual interest in USD of sixteen and a half percentage points (16.5%) until the Loan is either repaid, withdrawn or extended by the respective parties prior to such date.

### Section 4 - Disbursement of the Loan and Banking Details

Disbursement of the Loan will be executed by the Lender from the same account that the interest should be repaid to by the Borrower. The Lender holds its bank account at ABN AMRO Bank in Luxembourg (see information below). The Borrower holds its

Registered Office
2, boulevard de la Foire
L-1528 Luxembourg
Grand-Duchy of Luxembourg

● Luxembourg   ● Miami   ● Sao Paulo

www.PrudentGroup.US


PRUDENT
GROUP



accounts at Bank of America in Florida USA. The wires of the USD loan or interest payments shall be executed to the following accounts:

**Lender**

| | |
|---|---|
| USD Correspondent details | NAME: BANK OF AMERICA NA, NEW YORK |
| | SWIFT / BIC: BOFAUS3N |
| Beneficiary Bank | NAME: ABN AMRO BANK (Luxembourg) S.A. |
| | SWIFT/ BIC: BIC: ABNALU2A |
| Account details of the Fund | NAME: PRUDENT INVESTMENT FUND S.A. SICAV SIF |
| | IBAN: LU91 3550 1115 1784 0002 |


**Borrower**

**Any transfers from the Lender to the Borrower should be paid to the following account:**

| | |
|---|---|
| NAME OF BANK | Bank of America, USA |
| SWIFT | BOFAUS3N |
| ABA | 026009593 |
| Beneficiary Name | LGN International LLC |
| Account Number | 898064683387 |


**Section 5 - Payment of the Loan**

a)      Interest Payment Date: A date when the Borrower shall pay the Lender the interest owed as per specific request at such time by the Lender. The Lender may request a partial or full payment of Interest owed up to such Interest Payment Date as determined by the Lender as per the terms of this loan agreements. Each payment will take place within 72 hours after receiving a payment instruction for the interest amount due by the Lender. Such payments should be made to the account indicated by the Lender in this document.

b)      Principal Payment Date: The Borrower may prepay and the Lender may request a partial or full repayment of the Loan in accordance to the loan agreements as early as the Borrower or Lender chooses. The Lender should be given advance notice of at least seven (7) Business Days if the Borrower decides to repay any portion of the principal amount earlier then at the end of the calendar year period as of the Effective


Registered Office
2, boulevard de la Foire
L-1528 Luxembourg
Grand-Duchy of Luxembourg

 Luxembourg  ● Miami  ● Sao Paulo

www.PrudentGroup.US





Date. The loan is fully repayable at the end of the term unless the Lender gives the Borrower a written notice 10 days before the end of the term of a one year extention and rollover. The loan can then be renewed for a period of one year with the same terms and conditions as in this loan agreement.

The Borrower should be informed weekly, by any business Thursday in Luxembourg, of any such request of repayment of any part of the principal amount and the associated interest linked to this specific withdrawal request. The Lender shall upon receiving such repayment request initiate a transfer within ten (10) days following the date of the withdrawal request. Such payments should be made to the account indicated by the Lender in this document.

c)     All sums payable to the Lender hereunder shall be paid free and clear of any withholding taxes.

**Section 6 – Duration**

This Agreement shall enter into force on the date hereof and is concluded for a fixed period ending at December 31, 2016. The Agreement may be renewed for additional 12 months periods of time by an extention of the Master Loan Agreement.

Each 1 year extention of the Master Loan Agreement shall be executed by a written confirmation from the Lender to the Borrower executed 10 days before the end of the Term.

**Section 7 - Representations and Warranties**

a)     Both of the parties hereto represent and warrant to the other party as follows:

(i)     Both parties have the full power and authority and have taken all action necessary to execute and deliver this Agreement and to fulfil their obligations hereunder, and to consummate the transactions contemplated by this Agreement;

(ii)    The making and performance of this Agreement and all documents executed and delivered and required to be executed and delivered hereunder do not and will not violate any law or regulation of the jurisdiction of its incorporation or any other law or regulation applicable to either of them;

(iii)   This Agreement has been duly executed and delivered by either party and constitutes their legal, valid and binding obligation, enforceable in accordance with its terms.

Registered Office
2, boulevard de la Foire
L-1528 Luxembourg
Grand-Duchy of Luxembourg

● Luxembourg   ● Miami   ● Sao Paulo

www.PrudentGroup.US





(iv)    All consents, licenses, approvals, authorisations, registrations (including filing this agreement with any required governmental agencies), filings, opinions and declarations from or with any agency, department, administrative authority, statutory corporation, or judicial entity necessary for the validity or enforceability of their respective obligations under this Agreement have been obtained and no governmental authorisations other than any already obtained are required in connection with the execution, delivery and performance of this Agreement.

b)    The Borrower further represents and warrants to the Lender that on and as of the Effective Date the Borrower is not aware of any defence to payment arising out of any act or omission of the Borrower, or any right of offset or counterclaim against the Borrower.

**Section 8 - Events of Default**

8.1    (a) If:

(i)    The Borrower fails to pay any sum due from it hereunder at the time, in the currency and in the manner specified herein; or

(ii)    Any representation or statement made by the Borrower in this Agreement or any notice or other document, certificate, or statement delivered by it pursuant hereto or in connection herewith is or proves to have been incorrect or misleading when made; or

(iii)    The Borrower fails duly to perform or comply with any of the obligations expressed to be assumed by it in this Agreement; or

(iv)    The Borrower fails duly to perform or comply with any other obligation expressed to be assumed by them in this Agreement and such failure is not remedied within seven (7) business days after the Lender has given notice thereof to the Borrower; or

(v)    Any indebtedness of the Borrower is not paid when due, or any indebtedness is declared to be or otherwise becomes due and payable prior to its specified maturity or any creditor of the Borrower becomes entitled to declare any indebtedness due and payable to its specified maturity; or

(vi)    The Borrower is unable to pay its debts as they fall due, commences negotiations with any one or more creditors with a view to the general readjustment or rescheduling of its indebtedness or makes a general assignment for the benefit of or a composition or arrangement with its creditors; or

(vii)    The Borrower is declared bankrupt; or

Registered Office
2, boulevard de la Foire
L-1528 Luxembourg
Grand-Duchy of Luxembourg

● Luxembourg     ● Miami     ● Sao Paulo

www.PrudentGroup.US





(viii)    The Borrower repudiates this Agreement or does or causes to be done any act or thing evidencing an intention to repudiate this Agreement;

(b) THEN the Lender may:

(i)     Declare the Loan to be immediately due and payable (whereupon the same shall become so payable together with interest accrued due thereon), and/or

(ii)     Declare that the Loan shall be cancelled, whereupon the same shall be cancelled.

8.2     If, pursuant to Section 7.1, the Lender declares the Loan to be due and payable on the demand of the Lender, then, and at any time thereafter, the Lender may, by written notice to the Borrower, call for repayment of the Loan on such date as the Lender may specify in such notice whereupon the same shall become due and payable on such date together with any other sums then owed by the Borrower hereunder. The Lender also has priority over the equity investors in any future bankruptcy process in regards to receiving the repayment of what is owed to the Lender in accordance to the terms of this agreement.

## Section 9 - Assignment

This Agreement shall bind and inure to the benefit of the respective successors of the parties hereto, except that the Borrower may not assign or otherwise transfer all or any parts of its rights or obligations under this Agreement without the prior written consent of the Lender.

## Section 10 – Remedies and waivers, partial invalidity

No failure to exercise, nor any delay in exercising, any right or remedy under this agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy prevent any further or other exercises thereof or the exercise of any other right or remedy. the rights and remedies provided herein are cumulative and not exclusive of any rights or remedies provided by law.

If, at any time, any provision of this agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions thereof nor the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby.

## Section 11 – Taxes and other deductions



Registered Office
2, boulevard de la Foire
L-1528 Luxembourg
Grand-Duchy of Luxembourg

● Luxembourg     ● Miami     ● Sao Paulo


www.PrudentGroup.US

PRUDENT
GROUP



sums payable by the Borrower under this Agreement shall be paid free and clear of and (except to extent required by law) without any deduction or withholding for or on account of any present or ire taxes, duties, fees or charges of any nature now or hereafter imposed by Luxembourg or any er country, any political subdivision or taxing authority thereof or any federation or organisation.

### Section 12 - Counterparts

This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same agreement.

### Section 13 - Applicable Law

This Agreement is exclusively subject to the laws of the Grand-Duchy of Luxembourg.

### Section 14 - Jurisdiction

Exclusive jurisdiction is given to the Courts of the Grand-Duchy of Luxembourg and any claims arising under the present Agreement must be submitted to the Courts of Luxembourg-City.

### Section 15 – Notice

All notices, advice, statements, requests, demands and other communications ("**Notices**") under this Agreement shall be made in the English language and shall be given or made to the other Party in writing or- but then, except for routine notices, to be confirmed in writing – by facsimile and shall be addressed to them at the addresses below:

**Lender:**          **Address**
                     As indicated earlier in this agreement

**Borrower:**        As indicated earlier in this agreement

**IN WITNESS WHEREOF** the Parties to this Agreement have caused this Agreement to be duly executed and signed, in as many original copies as there are Parties to this Agreement, each Party declaring having received one original copy.

Registered Office          ● Luxembourg    ● Miami    ● Sao Paulo
2, boulevard de la Foire
L-1528 Luxembourg
Grand-Duchy of Luxembourg          www.PrudentGroup.US          



**The Lender**
By: Dennis Klemming
Capacity: Chairman

**The Borrower**
By: Jacob Gitman
Capacity: General Manager

**The Lender**
By: Giovanni Cataldi
Capacity: Board Member

**The Borrower**
By: Arthur Moroz
Capacity: Manager

Registered Office
2, boulevard de la Foire
L-1528 Luxembourg
Grand-Duchy of Luxembourg

● Luxembourg    ● Miami    ● Sao Paulo

www.PrudentGroup.US

PRUDENT GROUP

# COMPOSITE EXHIBIT A.▨



## MASTER LOAN AGREEMENT 004-123116 USD

**THE MASTER LOAN AGREEMENT** with the following number and identification code 004-123115 USD between Prudent Investment Fund SICAV SIF and LGN International LLC is being replaced by MASTER LOAN AGREEMENT 004-123116 USD. This MASTER LOAN AGREEMENT replaces any previously dated loan agreement between the two parties and regulates the terms and conditions outlined below by and between:

(A)     On one hand: Prudent Investment Fund SICAV SIF with registered office at 2 Boulevard de la Foire, Luxembourg L-1528, Luxembourg, represented by its Board of Directors,        hereafter        referred        to        as        the        "LENDER",

(B)     On the other hand: LGN International LLC, head-quarted at 1111 Kane Concourse, 518 Bay harbor Island, 331 54 Florida, USA. Registered in Delaware, USA. "BORROWER",

**WHEREAS** the Lender and the Borrower have agreed that the Lender will finance the transactions in loan receivables or other financing instruments or any profit participation arrangement directly or indirectly executed by the Borrower in the aggregate amount specified in Section 2 pursuant to the terms and conditions of this Agreement. The Lender has the right to send any partial amount at any time convenient for the Lender to the account of the Borrower;

**WHEREAS** in consideration for this Loan, the Borrower will procure the delivery to the Lender of third party security in accordance with the provisions of Section 6 of this Agreement;

The Lender and the Borrower are hereinafter referred to together as the "Parties" and each individually as a "Party".

**NOW THEREFORE,** the parties hereto agree as follows:

### Section 1 – Definitions

Wherever used in this Agreement, the terms below shall have the following meanings;

a)     **"Confidential Information"** means any information that the Borrower has furnished or wll furnish to the Lender according to this Agreement, but does no include any such information that is or becomes generally available to the public

 PRUDENT GROUP

(other than as a result of a breachy by the Lender of its obligation hereunder) or that is or becomes available to the Lender from a source other than the Borrower

b)   **'Effective Date"** is when the money is received by the borrower;

c)   **"USD"** shall mean the lawful currency of the United States of America;

d)   **"Loan" or "Master Loan Agreement"** shall have the meaning ascribed to it in Section 2 hereof;

e)   **"Payment Date"** means any day and date between date of signing this document until the loan is fully repaid after the Effective Date upon which the Loan (together with accrued interest) shall have been repaid in full by the Borrower.

f)   **"Term"** means December 31 of each year.

g)   **"Extentions and rollover of the Master Loan Agreement"** means the express renewal of the Master Loan Agreement for an additional 12 months period as of the Term by a written confirmation from the Lender to the Borrower executed 10 day before the end of the Term.

Words importing the singular include the plural and vice versa and the neuter gender shall include the feminine and masculine genders.

## Section 2 - Agreement for the Loan

Subject to the terms and conditions of this Agreement the Lender agrees to finance loan receivables to the Borrower and the Borrower agrees to become the debtor of the Lender, for an aggregate amount of USD twenty million dollars, USD 20,000,000. This amount can be made available by the Lender to the Borrower in one or multiple transfers to either of the accounts indicated in this Master Loan Agreement.

## Section 3 - Interest Rate

Any amount received under the Master Loan Agreement shall bear annual interest in USD of sixteen and a half percentage points (16.5%) until the Loan is either repaid, withdrawn or extended by the respective parties prior to such date.

## Section 4 - Disbursement of the Loan and Banking Details

Disbursement of the Loan will be executed by the Lender from the same that the interest should be repaid to by the Borrower. The Lender holds its bank account at ABN AMRO Bank in Luxembourg (see information below). The Borrower holds its



accounts at Bank in America in Florida, USA. The wires of the USD loan or interest payments shall be executed to the following accounts:

**Lender/Investor**

| | |
|---|---|
| USD Correspondent details | NAME: BANK OF AMERICA NA, NEW YORK |
| | SWIFT / BIC: BOFAUS3N |
| Beneficiary Bank | NAME: ABN AMRO BANK (Luxembourg) S.A. |
| | SWIFT/ BIC: BIC: ABNALU2A |
| Account details of the Fund | NAME: PRUDENT INVESTMENT FUND S.A. SICAV SIF |
| | IBAN: LU91 3550 1115 1784 0002 |

**Borrower**

**Any transfers from the Lender to the Borrower should be paid to the following account:**

| | |
|---|---|
| Name of Bank | Bank of America, USA |
| SWIFT | BOFAUS3N |
| ABA | 026009593 |
| Beneficiary Name | LGN International LLC |
| Account Number | 898064683387 |

## Section 5 - Payment of the Loan

a)     Interest Payment Date: A date when the Borrower shall pay the Lender the interest owed as per specific request at such time by the Lender. The Lender may request a partial or full payment of Interest owed up to such Interest Payment Date as determined by the Lender as per the terms of this loan agreements. Each payment will take place within 72 hours after receiving a payment demand for the interest amount due from the Lender. Such payments shall be made to the account indicated by the Lender in this document.

b)     Principal Payment Date: The Borrower may prepay and the Lender may request a partial or full repayment of the Loan in accordance to the loan agreements as early as the Borrower or Lender chooses. The Lender should be given advance notice of at least seven (7) Business Days if the Borrower decides to repay any portion of the principal amount earlier then at the end of the calendar year period as of the Effective Date.  The loan is fully repayable at the end of the term unless the Lender gives the Borrower a written notice ten (10) days before the end of the one year term of a one year extention and rollover. The loan can then be renewed for a period of one year with the same terms and conditions as in this loan agreement.



The Borrower should be informed weekly, by any business Thursday in Luxembourg, of any such request of repayment of any part of the principal amount and the associated interest linked to this specific withdrawal request. The Borrower shall upon receiving such repayment request initiate a transfer within ten (10) days following the date of the withdrawal request. Such payments should be made to the account indicated by the Lender in this document.

c)     All sums payable to the Lender hereunder shall be paid free and clear of any withholding taxes.

### Section 6 - Duration

This agreement shall enter into force on the date hereof and is concluded for a fixed period ending at December 31,2017. The Agreement may be renewed for additional 12 months periods of time by an extention of the Master Loan Agreement.

Each 1 year extention of the Master Loan Agreement shall be executed by a written confirmation from the Lender to the Borrower executed 10 days before the end of the Term.

### Section 7 – Representations and Warranties

a)     Both of the parties hereto represent and warrant to the other party as follows:

(i)     Both parties have the full power and authority and have taken all action necessary to execute and deliver this Agreement and to fulfil their obligations hereunder, and to consummate the transactions contemplated by this Agreement;

(ii)     The making and performance of this Agreement and all documents executed and delivered and required to be executed and delivered hereunder do not and will not violate any law or regulation of the jurisdiction of its incorporation or any other law or regulation applicable to either of them;

(iii)     This Agreement has been duly executed and delivered by either party and constitutes their legal, valid and binding obligation, enforceable in accordance with its terms.

(iv)     All consents, licenses, approvals, authorisations, registrations (including filling this agreement with any required governmental agencies), filings, opinions and declarations from or with any agency, department, administrative authority, statutory corporation, or judicial entity necessary for the validity or enforceability of their respective obligations under this Agreement have been obtained and no governmental authorisations other than any already obtained are required in connection with the execution, delivery and performance of this Agreement.



b)    The Borrower further represents and warrants to the Lender that on and as of the Effective Date the Borrower is not aware of any defence to payment arising out of any act or omission of the Borrower, or any right of offset or counterclaim against the Borrower.

**Section 8 - Events of Default**

8.1    (a) If:

(i)    The Borrower fails to pay any sum due from it hereunder at the time, in the currency and in the manner specified herein; or

(ii)    Any representation or statement made by the Borrower in this Agreement or any notice or other document, certificate, or statement delivered by it pursuant hereto or in connection herewith is or proves to have been incorrect or misleading when made; or

(iii)    The Borrower fails duly to perform or comply with any of the obligations expressed to be assumed by it in this Agreement; or

(iv)    The Borrower fails duly to perform or comply with any other obligation expressed to be assumed by them in this Agreement and such failure is not remedied within seven (7) business days after the Lender has given notice thereof to the Borrower; or

(v)    Any indebtedness of the Borrower is not paid when due, or any indebtedness is declared to be or otherwise becomes due and payable prior to its specified maturity or any creditor of the Borrower becomes entitled to declare any indebtedness due and payable to its specified maturity; or

(vi)    The Borrower is unable to pay its debts as they fall due, commences negotiations with any one or more creditors with a view to the general readjustment or rescheduling of its indebtedness or makes a general assignment for the benefit of or a composition or arrangement with its creditors; or

(vii)    The Borrower is declared bankrupt; or

(viii)    The Borrower repudiates this Agreement or does or causes to be done any act or thing evidencing an intention to repudiate this Agreement;

(b) THEN the Lender may:

(i)    Declare the Loan to be immediately due and payable (where upon the same shall become so payable together with interest accrued due thereon), and/or

(ii)    Declare that the Loan shall be cancelled, whereupon the same shall be cancelled.



8.2     If, pursuant to Section 7.1, the Lender declares the Loan to be due and payable on the demand of the Lender, then, and at any time thereafter, the Lender may, by written notice to the Borrower, call for repayment of the Loan on such date as the Lender may specify in such notice whereupon the same shall become due and payable on such date together with any other sums then owed by the Borrower hereunder. The Lender also has priority over the equity investors in any future bankruptcy process in regards to receiving the repayment of what is owed to the Lender in accordance to the terms of this agreement.

## Section 9 - Assignment

This Agreement shall bind and inure to the benefit of the respective successors of the parties hereto, except that the Borrower may not assign or otherwise transfer all or any parts of its rights or obligations under this Agreement without the prior written consent of the Lender.

## Section 10 – Remedies and waivers, partial invalidity

No failure to exercise, nor any delay in exercising, any right or remedy under this agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy prevent any further or other exercise thereof or the exercise of any other right or remedy. the rights and remedies provided herein are cumulative and not exclusive of any rights or remedies provided by law.

If, at any time, any provision of this agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions thereof nor the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby.

## Section 11 – Taxes and other deductions

Alls sums payable by the Borrower under this Agreement shall be paid free and clear of an (except to the extent required by the law) without any deduction or withholding for or on account of any present or future taxesm duties, fees or charges of any nature now or hereafter imposed by Luxembourg or any other country, any political subdivision or taxing authority thereof or any federation or organization.

## Section 12 - Counterparts

This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same agreement.



### Section 13 - Applicable Law

This Agreement is exclusively subject to the laws of the Grand-Duchy of Luxembourg.

### Section 14 - Jurisdiction

Exclusive jurisdiction is given to the Courts of the Grand-Duchy of Luxembourg and any claims arising under the present Agreement must be submitted to the Courts of Luxembourg, City.

### Section 15 – Notice

All notices, advice, statements, requests, demands and other communications ("**Notices**") under this Agreement shall be made in the English language and shall be given or made to the other Party in writing or- but then, except for routine notices, to be confirmed in writing - by facsimile and shall be addressed to them at the addresses below:

| | |
|---|---|
| **Lender:** | **Address**<br>As indicated earlier in this agreement |
| **Borrower:** | As indicated earlier in this agreement |


PRUDENT
GROUP

**IN WITNESS WHEREOF** the Parties to this Agreement have caused this Agreement to be duly executed and signed, in as many original copies as there are Parties to this Agreement, each Party declaring having received one original copy.

**The Lender**
By: Dennis Klemming
Capacity: Chairman

**The Borrower**
By: Jacob Gitman
Capacity: Director

**The Lender**
By: Giovanni Cataldi
Capacity: Board Member

**The Borrower**
By: Larry Gitman
Capacity: Director

# COMPOSITE EXHIBIT A.6

### OPERATING AGREEMENT FOR DISBURSEMENT OF FUNDS
004-090117 USD

By this agreement:

(i) **PRUDENT INVESTMENT FUND SICAV SIF**, (Prudent Investment Fund: Prudent Diversified Corporate Lending Fund) with registered office at 2 Boulevard de la Foire, Luxembourg L-1528, Luxembourg, herein represented by its Directors named and signed below (hereinafter referred to simply as "PIF", "Investor" or "Lender");

(ii) **LGN INTERNATIONAL LLC,** limited liability company headquartered at 1111 Kane Concourse 518, Bay Harbor Island, 33154 Florida, United States, registered in Delaware, herein represented by its statutory administrators named and signed below (hereinafter referred to simply as "LGN" or "Borrower" and, together with PIF, the "Parties");

WHEREAS:

a. PIF wishes to make a certain amount of monies, funds and financial resources available to LGN through loans or capital injections into certain investment platforms and funds advised by LGN (the "Disbursements"); and

b. the Parties want to regulate the options, rules and conditions applicable to such disbursements.

HAVE AGREED TO EXECUTE THE PRESENT 'OPERATING AGREEMENT FOR DISBURSEMENT OF FUNDS' (the "Agreement"), WHICH WILL BE GOVERNED BY THE FOLLOWING CLAUSES AND CONDITIONS, AND SUPERCEDES ANY AND ALL PRIOR DOCUMENTS AND AGREEMENTS, SUCH AS 'MLA 004-123116 USD', RELATING TO ANY LOAN ARRANGEMENTS BETWEEN THE PARTIES:

### ARTICLE 1.    DEFINITIONS

In this Agreement and its Exhibits, the following expressions, except where there is a specific provision to the contrary or where the context otherwise requires, have the following meanings:

| | |
|---|---|
| "Advance" | means any amount, limited to the Facility amount, drawn by the Borrower in accordance with the provisions of this Agreement. |
| "Business Day" | means any day (other than a Saturday or Sunday) on which banks and foreign exchange markets are open in New York and such other place where any payment is required to be made or any act is required to be performed hereunder. |
| "Date of Drawdown" | means the date on which a drawdown is made pursuant to Article 2 of this Agreement. |

"Interest Payment Date"            means the date coincident to each Principal Repayment Date. In the
                                   event that an Interest Payment Date shall be a day that is not a
                                   Business Day, then the Interest Payment Date shall be the next
                                   succeeding day that is a Business Day.

"Interest Period"                  Interest Period means the period commencing on (and including) the
                                   applicable Date of Drawdown and ending on (but not including) the
                                   first Interest Payment Date thereafter, and then each succeeding
                                   period commencing on (and including) the last day of the preceding
                                   Interest Period and ending on (but not including) the next succeeding
                                   Interest Payment Date.

"Facility"                         means the aggregate amount of Disbursements made available by
                                   Lender to Borrower according to this Agreement, as described in item
                                   2.2 of this Agreement.

"Principal Repayment Dates"        means the repayment dates specified as such by the Borrower in the
                                   Notice of Drawdown.

"Tax" or "Taxes"                   shall include all present and future taxes, levies, imposts, duties,
                                   charges, fees, deductions and withholdings and any restrictions or
                                   conditions resulting in a charge.

"Term"                             means that the Master Loan Agreement will expire on December 31,
                                   2017.

For the purpose of this Agreement all interest, charges and so forth will be computed on the basis of
a year of 360 days and the actual number of days elapsed.

## ARTICLE 2.    DISBURSEMENT OPTIONS

1.    The Parties hereby agree that, as mutually accepted between the Parties in each applicable case,
the Disbursements may take place through (i) direct loans from the Lender to the Borrower ("Loans"),
(ii) direct investments from PIF into credit rights investment funds or other kind of investment funds
or platforms, in all cases serviced and/or advised by LGN ("Investments"), or (iii) any other financial
arrangement mutually defined in written by the Parties.

2.    The Disbursements shall have a maximum aggregate amount of US$ [20,000,000.00 (twenty
million] United States Dollars) ("Facility"), considering all Disbursements made according to the
alternatives described under item 2.1 above.

## ARTICLE 3.    LOANS

1.    In case of any Disbursement to be made through Loans, Lender grants to the Borrower, who declares to have accepted from Lender, an advised and uncommitted credit in the amount of the Facility, which shall be subject to the terms and conditions set forth in Exhibit A hereto.

### ARTICLE 4.    INVESTMENTS

1.    Any and all Disbursements made through Investments shall be implemented and completed upon direct capital injections effected by PIF into credit rights investment funds or other kind of investment funds and platforms specifically agreed upon by the Parties.

2.    Each such Investment shall be made in compliance with the Federal Reserve and evidenced through the execution, by PIF and/or its local representative, of the relevant subscription note (*Boletim de Subscrição*) or corresponding document related to the respective fund being invested in, according to the applicable regulation.

### ARTICLE 5.    TAXES

The Borrower shall pay all taxes, if any, which will be levied as withholding tax and which Lender can't set off as advance levy with taxes due by other reasons, as well as the costs of the enforcement of this Agreement. Costs of enforcement include the costs of legal assistance incurred.

### ARTICLE 6.    COMMUNICATIONS AND NOTICES

All notices and communications made hereunder by either party to the other, shall be in writing in the English language, by email or by telefax or be confirmed in writing at addresses stated at the opening of page 1 if so requested by the counterparty, or to such other addresses as may from time to time be notified in writing by either party to the other.

### ARTICLE 7.    MISCELLANEOUS

1.    In respect of this Agreement and its implementation the Borrower irrevocably waives to the extent possible any claim it may now or at any time have to immunity of any kind as to court or arbitration proceedings and the enforcement of any awards, sentences, judgments, injunctions, decrees or court orders legally given or made in connection with such proceedings.

2.    No failure to exercise and no delay in exercising, on the part of Lender, any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege preclude any other or future exercises of any other right, power or privilege. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law.

3.    All payments to be made by the Borrower under this Agreement shall be made to Lender in United States Dollars at the account, which Lender may from time to time indicate. These payments

made by the Borrower hereunder are considered to be firstly for costs and expenses, then for penalty fee, and default interest, if this is the case, and, lastly, for interest and principal, in that order.

4.     The accounts of Lender shall be prima facie evidence of any amount, which the Borrower may owe from time to time to Lender pursuant to this Agreement, except in case of manifest error.

5.     The Borrower is not entitled to assign any of the rights or obligations arising out of this Agreement.

6.     Lender shall at all times be entitled to set-off all and any claims the Lender group has on the Borrower under this Agreement against any counterclaims of the Borrower.

7.     This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same agreement.

8.     This Agreement is subject to the laws of United States and, to the extent possible without conflicting with American laws, to the laws of the Grand-Duchy of Luxembourg. Jurisdiction is given to the Courts of the State of Florida, United States, and any claims arising under the present Agreement must thus be submitted to the Courts of the State of Florida, United States.

9.     This Agreement shall become effective when executed and delivered by Lender and the Borrower, and shall be binding in all respects upon the parties and their respective successors.

IN WITNESS WHEREOF the parties hereto, acting through their duly authorized representatives, have executed this Agreement on September 1, 2017, superseding and replacing for any and all legal purposes all prior documents and agreements, either in written or not, relating to this loan arrangement between the parties.

Lender:

**PRUDENT INVESTMENT FUND SICAV SIF**
By: Dennis Klemming / Giovanni Cataldi Neto

Borrower:

**LGN INTERNATIONAL LLC**
By: Jacob Gitman / Larry Gitman

Witnesses:

1. _____
Name: G. Solomovich
I.D.: S451-280-46-874-0

2. _____
Name:
I.D.: K 242-960-75-708-0

## Exhibit A

## MASTER LOAN AGREEMENT 004-090117 USD
## TERMS AND CONDITIONS

### 1.   DRAWDOWN AND PURPOSE

1.      Subject to the provisions of the Agreement, the Borrower has the right to request to borrow Advances in the maximum aggregate amount of the Facility, after Lender has received a notice from the Borrower ("Notice of Drawdown"), in conformity with Exhibit B hereto (by email or telefax or be confirmed in writing if so requested by the counterparty), indicating the proposed Date of Drawdown, the amount of the Advance and the Interest Period, which notice, once given, shall be binding and irrevocable.

3.      The Facility will be available to the Borrower throughout the term of the Agreement. The amount of any Advance shall not exceed the Facility amount, considering all Disbursements made under the Agreement.

### 2.   INTEREST

1.      Any Loan amount received under the Agreement shall carry an adjustable annual interest as per the following terms:

A)    A fixed monthly simple interest presently of 1,375% equal to a simple annual interest in USD of sixteen and a half per cent (16,5%) until the Loan is repaid, canceled or extended. This monthly interest may be reset to a higher level upon mutual agreement between Lender and Borrower on the last Luxembourg Banking Friday of each calendar month.

B)    The interest will be calculated on the principal and also on the accumulated interests for NAV purposes.

2.      Interest shall be payable on each Interest Payment Date.

3.      If any Interest Payment Date would fall on a day which is not a Business Day then such interest period shall be extended to the next succeeding Business Day unless such Business Day falls on another calendar month, in which case such interest period shall end on the immediately preceding Business Day.

### 3.   REPAYMENT

1.      Interest Payment Date: A date when the Borrower shall pay the Lender the interest owed as per specific request at such time by the Lender. The Lender may request a partial or full payment of Interest owed up to such Interest Payment Date as determined by the Lender according to the terms of this Agreement. Each payment will take place within 72 hours after receiving a payment demand for the

interest amount due from the Lender. Such payments shall be made to the account indicated by the Lender in this document.

2. Principal Payment Date: The Borrower may prepay and the Lender may request a partial or full repayment of the Loan in accordance to the loan agreements as early as the Borrower or Lender chooses. The Lender should be given advance notice of at least seven (7) Business Days if the Borrower decides to repay any portion of the principal amount earlier then at the end of the calendar year period as of the Effective Date. The Loan is fully repayable at the end of the term unless the Lender gives the Borrower a written notice ten (10) days before the end of the one-year term thus causing an extension. The loan can then be renewed for a period of one year with the same terms and conditions as in this loan agreement.

3. Any repayment that is received by the Lender in accordance with items 1 and 2 above is first categorized as an interest payment against the outstanding loan amount of this Agreement and subsequently as a payment against the principal notional amount outstanding against this Agreement, as per the applicable Call Notice Request Form, according to Exhibit C hereto.

4. The Borrower should be informed weekly, by any business Thursday in Luxembourg, of any such request of repayment of any part of the principal amount and the associated interest linked to this specific withdrawal request. The Borrower shall upon receiving such repayment request initiate a transfer within ten (10) days following the date of the withdrawal request. Such payments should be made to the account indicated by the Lender in this document.

5. All sums payable to the Lender hereunder shall be paid free and clear of any withholding taxes.

6. The Facility is not revolving. Any amount repaid to Lender may not be re-borrowed.

7. All payments shall be made on the Interest Payment Dates and Principal Payment Dates, as applicable, no later than at 12:00 noon (Florida, United States time) in lawful currency of the United States of America (in freely transferable United States Dollars), in immediately available same day funds, through the closing of a currency exchange agreement for credit to the following account of Lender (or at such other place or bank account as may be notified by Lender):

| | |
|---|---|
| USD Correspondent details | NAME: BANK OF AMERICA NA, NEW YORK |
| | SWIFT / BIC: BOFAUS3N |
| Beneficiary Bank | NAME: ABN AMRO BANK (Luxembourg) S.A. |
| | SWIFT/ BIC: BIC: ABNALU2A |
| Account details of the Fund | NAME: PRUDENT INVESTMENT FUND S.A. SICAV SIF |
| | IBAN: LU91 3550 1115 1784 0002 |

## 4. CONDITIONS PRECEDENT

1. The obligations of Lender hereunder are subject to the condition that Lender shall have received, in a form and substance satisfactory to it, prior to the first loan disbursement:

a.  Certified copies of the Borrower's incorporation documents including all amendments thereto;

b.  Copies of all resolutions, authorizations, approvals, consents, licenses and legislation, if any, necessary or appropriate for entering into and performance under the Agreement by the Borrower; and

c.  A copy of the signatures of those persons authorized to execute this Agreement on behalf of the Borrower and of the persons authorized to sign or dispatch all notices, certificates and other documents on behalf of the Borrower in connection with this Agreement.

2.  Borrower shall, at its own expense, provide for the translation into English, by a sworn translator, of all documents mentioned above which may not be directly written and issued in the English language, and shall have the same delivered to Lender upon request of the Lender.

## 5.  REPRESENTATIONS

The Borrower represents to Lender, prior to signing of this Agreement and prior to the drawing under the Facility, that:

a.  The Borrower has been validly incorporated and is validly existing under the laws of the United States of America and has all requisite corporate powers to carry on its business.

b.  The Borrower has all power and have obtained all the necessary approvals to enter into and perform its obligations under this Agreement and will take all the necessary actions to obtain, and to maintain valid all authorizations, approvals and consents of and/or registrations with all governmental and regulatory authorities in the United States of America or any political subdivision thereof as shall be necessary or appropriate under the laws thereof in connection with the entrance into and performance of this Agreement by the Borrower.

c.  Borrower is not in breach of or default under any agreement, document or other obligation to which it is a party or by which it is bound and no such agreement, document or other obligation will be contravened by the Borrower entering into this Agreement or by borrowing hereunder or performing any of its obligations hereunder.

d.  No litigation, arbitration or administrative proceedings before or of any court, tribunal or governmental authority is presently pending or, to the best of the knowledge and belief of the Borrower, threatened against the Borrower or any of its respective assets which might adversely affect the Borrower's financial condition or the ability of the Borrower to perform their respective obligations hereunder and no such proceedings is presently pending or, to the best of the knowledge and belief of the Borrower, threatened to enjoin or restrain the execution or performance of this Agreement, or in any manner to question the laws and proceedings under which this Agreement is to be executed, performed or enforced, and none of the said laws and proceedings have been repealed, revoked or rescinded in whole or in part.

e.   The Borrower has filed or delivered all tax returns which it is required by Law to file or deliver and has paid all taxes, assessments, fees and other governmental charges assessed against it or upon any of its properties, assets, income or franchises, and the Borrower is not in default in the payment of any taxes which is not disclosed in the financial statement referred to in paragraph (f) below.

f.   The Borrower's audited financial statements (including the income statement and balance sheet) for the year ended the year prior to the execution date of this Agreement have been prepared on a basis consistently applied and give a true and fair view of the results of its operations for that year and the state of its affairs at that date, and in particular accurately disclose all the Borrower's liabilities (actual or contingent).

g.   There has been no material adverse change in the Borrower's financial condition since the date referred to in paragraph (f) above.

h.   All information furnished by the Borrower in connection with the Facility is true, accurate and correct in all material respects and does not contain any untrue statement, nor omit to state any fact the omission of which makes the statements therein misleading in the light of the circumstances under which they were made, all expressions of expectation, intention, belief and opinion contained therein were honestly made on reasonable grounds after due and careful inquiry by the Borrower, and the Borrower has fully disclosed in writing to Lender all facts relating to the Borrower which the Borrower knows or should reasonably know and which are material for disclosure to Lender in the context of this Agreement.

i.   Each of the above representations and warranties will be correct and complied with in all material respects so long as any sum remains to be lent or remains payable under this Agreement as if repeated then by reference to the then existing circumstances, except that the reference to accounts in paragraph (f) above shall be construed as a reference to the then latest available annual accounts of the Borrower.

## 6.   UNDERTAKINGS/COVENANTS

The Borrower hereby procures towards Lender that, as long as the Facility or any part thereof remains outstanding or any other sum is payable under this Agreement, that:

a.   it will provide Lender with its annual (consolidated if any) audited financial statements, as soon as available and in any event no later than 120 (one hundred and twenty) days after closing of the relevant accounts for the relevant year. Furthermore, the Borrower shall provide Lender with such other information, which Lender may reasonably request from time to time;

b.   the Borrower will promptly (but in any case, no later than three days after it has become aware of such event) notify Lender of the occurrence of an Event of Default and provide Lender with

full details of any steps which it is taking, or is considering taking, in order to remedy or mitigate the effect of the Event of Default or otherwise in connection with it;

c. the Borrower's obligations hereunder and under each document to be executed by the Borrower hereunder rank and will rank at least *pari passu,* in priority of payment and in all other respects, with all other unsecured and unsubordinated indebtedness of the Borrower;

d. The Borrower shall also be responsible for procuring the translation of this Agreement into Portuguese by a sworn translator and register such document with a Public Register of Documents of its domicile within 20 (twenty) days of the execution of the same, providing Lender with a registered copy of it;

e. The Borrower shall not without the prior written consent of Lender and with regard to any other transactions with similar nature, terms and conditions:

  (a) create or permit to subsist any charge, mortgage, pledge, security interest or any other right of a third party in respect of (i) any of its present or future property, and/or (ii) any of its present or future other assets;

  (b) sell, barter or otherwise alienate (including, without limitation, through any sale and leaseback and other off-balance transaction) any of its property or other assets, except for a sale or transfer for full value in the normal course of business of assets as mentioned under (a) (ii);

  (c) guarantee or incur liability in any other way for the obligations and/or debts of third parties, whether due or not due, absolute or contingent; and the Borrower shall procure that none of its present or future subsidiaries or companies in which the Borrower holds or will hold the majority of the shares, will create any security interest or incur liability as described in the first part of this item and that such subsidiaries or companies shall accept the foregoing as their own obligation; and

## 7. EVENTS OF DEFAULT

1. The total outstanding principal sum of the Loans under the Facility together with accrued interest and any other charges due by the Borrower to Lender under this Agreement will become due and payable, without giving notice or observing any other formality, upon occurrence of any of the following events, in which case the Borrower will no longer be entitled to make any Drawdown under this Agreement:

a. the Borrower shall default in the due payment of principal, interest, arrangement fee or any other amount payable hereunder on the respective due date;

b.    the Borrower shall default in the due performance or observance of any other provision contained in this Agreement and such default shall not be rectified within a period of 5 (five) days after Lender shall have given the defaulting party written notice of such default;

c.    the Borrower changes, or threatens to change, ceases or threatens to cease business as presently conducted other than in the normal course of business or sells, transfers or otherwise alienates the whole or any substantial part of its property or assets, including revenues, whether by one transaction or a series of transactions, related or not, without the prior written consent of Lender;

d.    the Borrower shall be unable, or admit in writing its inability to pay its debts as they mature, make an assignment for the benefit of creditors, or commit any act of bankruptcy, or any encumbrance takes possession or any order relating to dissolution, liquidation, bankruptcy or insolvency or for the appointment of a liquidator or receiver or judicial administrator or trustee or the levy of any execution shall be passed, commenced or made with respect to it or any of its assets;

e.    any adverse event or change shall have occurred in the economic or financial situation of the Borrower from which Lender shall conclude in its reasonable opinion, after having made the necessary investigations and after having notified the Borrower of the result of such investigations, that the ability of the Borrower to fulfil its obligations under this Agreement has been materially impaired;

f.    if the country in which the Borrower has its principal office announces or enters into rescheduling or restructuring of its debts, unless the Borrower's ability, as the case may be, to service and repay the Facility, shall remain unaffected thereby;

g.    a distress or execution or writ of seizure and sale or attachment is levied upon or issued against any of the property or assets of the Borrower representing a substantial part of such property or asset, which is not discharged within 14 (fourteen) days thereof;

h.    this Agreement, or any provision thereof is or becomes or is claimed to be, for any reason, invalid or unenforceable or at any time it is unlawful or impossible for the Borrower to perform any of its obligations hereunder or it is unlawful or impossible for Lender to exercise any of its rights hereunder;

j.    the change of Borrower's majority control without the prior specific written consent of Lender.

2.    If, pursuant to the above, the Loan becomes fully due and payable, then, and at any time thereafter, the Lender may, by written notice to the Borrower, call for repayment of the Loan on such date as the Lender may specify in such notice whereupon the same shall become due and payable on such date together with any other sums then owed by the Borrower hereunder. The Lender also has priority over the equity investors in any future bankruptcy process in regard to receiving the repayment of what is owed to the Lender in accordance to the terms of this agreement.

## Exhibit C

### CALL NOTICE REQUEST FORM

Luxembourg, [    ].

Reference: PRUDENT DIVERSIFIED CORPORATE LENDING FUND

**LGN INTERNATIONAL LLC ("Borrower")**
1111 Kane Concourse, 518, Bay Harbor Island, 33154
Florida, United States of America

Attn.:   Mr. Jacob Gitman / Larry Gitman

Ref:    Notice of repayment under the Loan Agreement:

Dear Sir,

1.     We refer to article 4.3 of the Master Loan Agreement USD (the "Agreement"), executed by and between **PRUDENT INVESTMENT FUND SICAV SIF** and Borrower on September 1, 2017. TERMS DEFINED IN THE AGREEMENT ARE USED HEREIN AS THEREIN DEFINED, UNLESS OTHERWISE DEFINED HEREIN.

2.     This is to formally request a REPAYMENT to be effected under the terms of the Agreement, as follows:

Currency:                  [   ]
Amount:                   [   ]
Date of repayment request:    [   ]
Bank Details for the Lender:

| Name of Correspondent Bank: | Bank of America NA, New York |
| --- | --- |
| Correspondent Bank Swift: | BOFAUS3N |
| Beneficiary Bank: | ABN Amro Bank (Luxembourg) S.A. |
| Beneficiary Bank Swift: | ABNALU2A |
| Beneficiary Name: | Prudent Investment Fund S.A. SICAV SIF – Diversified Corporate Lending |
| Beneficiary Account Number: | LU91 3550 1115 1784 0002 |

Signed by:

*[signature]*

**PRUDENT INVESTMENT FUND SICAV SIF**
(two board members of the Prudent Investment Fund)

# COMPOSITE EXHIBIT A.7

## OPERATING AGREEMENT FOR DISBURSEMENT OF FUNDS
### 004-123118 USD

By this agreement:

(i) **PRUDENT INVESTMENT FUND SICAV SIF**, (Prudent Investment Fund: Prudent Diversified Corporate Lending Fund) with registered office at 2 Boulevard de la Foire, Luxembourg L-1528, Luxembourg, herein represented by its Directors named and signed below (hereinafter referred to simply as "PIF", "Investor" or "Lender");

(ii) **LGN INTERNATIONAL LLC,** limited liability company headquartered at 1111 Kane Concourse 518, Bay Harbor Island, 33154 Florida, United States, registered in Delaware, herein represented by its statutory administrators named and signed below (hereinafter referred to simply as "LGN" or "Borrower" and, together with PIF, the "Parties");

WHEREAS:

a. PIF wishes to make a certain amount of monies, funds and financial resources available to LGN through loans or capital injections into certain investment platforms and funds advised by LGN (the "Disbursements"); and

b. the Parties want to regulate the options, rules and conditions applicable to such disbursements.

HAVE AGREED TO EXECUTE THE PRESENT 'OPERATING AGREEMENT FOR DISBURSEMENT OF FUNDS' (the "Agreement"), WHICH WILL BE GOVERNED BY THE FOLLOWING CLAUSES AND CONDITIONS, AND SUPERCEDES ANY AND ALL PRIOR DOCUMENTS AND AGREEMENTS, SUCH AS 'MLA 004-123117 USD', RELATING TO ANY LOAN ARRANGEMENTS BETWEEN THE PARTIES:

## ARTICLE 1.      DEFINITIONS

In this Agreement and its Exhibits, the following expressions, except where there is a specific provision to the contrary or where the context otherwise requires, have the following meanings:

| | |
|---|---|
| "Advance" | means any amount, limited to the Facility amount, drawn by the Borrower in accordance with the provisions of this Agreement. |
| "Business Day" | means any day (other than a Saturday or Sunday) on which banks and foreign exchange markets are open in New York and such other place where any payment is required to be made or any act is required to be performed hereunder. |
| "Date of Drawdown" | means the date on which a drawdown is made pursuant to Article 2 of this Agreement. |

| | |
|---|---|
| "Interest Payment Date" | means the date coincident to each Principal Repayment Date. In the event that an Interest Payment Date shall be a day that is not a Business Day, then the Interest Payment Date shall be the next succeeding day that is a Business Day. |
| "Interest Period" | Interest Period means the period commencing on (and including) the applicable Date of Drawdown and ending on (but not including) the first Interest Payment Date thereafter, and then each succeeding period commencing on (and including) the last day of the preceding Interest Period and ending on (but not including) the next succeeding Interest Payment Date. |
| "Facility" | means the aggregate amount of Disbursements made available by Lender to Borrower according to this Agreement, as described in item 2.2 of this Agreement. |
| "Principal Repayment Dates" | means the repayment dates specified as such by the Borrower in the Notice of Drawdown. |
| "Tax" or "Taxes" | shall include all present and future taxes, levies, imposts, duties, charges, fees, deductions and withholdings and any restrictions or conditions resulting in a charge. |
| "Term" | means that the Master Loan Agreement will expire on December 31, 2019. |

For the purpose of this Agreement all interest, charges and so forth will be computed on the basis of a year of 360 days and the actual number of days elapsed.

## ARTICLE 2.    DISBURSEMENT OPTIONS

1.    The Parties hereby agree that, as mutually accepted between the Parties in each applicable case, the Disbursements may take place through (i) direct loans from the Lender to the Borrower ("Loans"), (ii) direct investments from PIF into credit rights investment funds or other kind of investment funds or platforms, in all cases serviced and/or advised by LGN ("Investments"), or (iii) any other financial arrangement mutually defined in written by the Parties.

2.    The Disbursements shall have a maximum aggregate amount of US$ [20,000,000.00 (twenty million] United States Dollars) ("Facility"), considering all Disbursements made according to the alternatives described under item 2.1 above.

## ARTICLE 3.    LOANS

1. In case of any Disbursement to be made through Loans, Lender grants to the Borrower, who declares to have accepted from Lender, an advised and uncommitted credit in the amount of the Facility, which shall be subject to the terms and conditions set forth in Exhibit A hereto.

## ARTICLE 4.    INVESTMENTS

1. Any and all Disbursements made through Investments shall be implemented and completed upon direct capital injections effected by PIF into credit rights investment funds or other kind of investment funds and platforms specifically agreed upon by the Parties.

2. Each such Investment shall be made in compliance with the Federal Reserve and evidenced through the execution, by PIF and/or its local representative, of the relevant subscription note (*Boletim de Subscrição*) or corresponding document related to the respective fund being invested in, according to the applicable regulation.

## ARTICLE 5.    TAXES

The Borrower shall pay all taxes, if any, which will be levied as withholding tax and which Lender can't set off as advance levy with taxes due by other reasons, as well as the costs of the enforcement of this Agreement. Costs of enforcement include the costs of legal assistance incurred.

## ARTICLE 6.    COMMUNICATIONS AND NOTICES

All notices and communications made hereunder by either party to the other, shall be in writing in the English language, by email or by telefax or be confirmed in writing at addresses stated at the opening of page 1 if so requested by the counterparty, or to such other addresses as may from time to time be notified in writing by either party to the other.

## ARTICLE 7.    MISCELLANEOUS

1. In respect of this Agreement and its implementation the Borrower irrevocably waives to the extent possible any claim it may now or at any time have to immunity of any kind as to court or arbitration proceedings and the enforcement of any awards, sentences, judgments, injunctions, decrees or court orders legally given or made in connection with such proceedings.

2. No failure to exercise and no delay in exercising, on the part of Lender, any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege preclude any other or future exercises of any other right, power or privilege. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law.

3. All payments to be made by the Borrower under this Agreement shall be made to Lender in United States Dollars at the account, which Lender may from time to time indicate. These payments

made by the Borrower hereunder are considered to be firstly for costs and expenses, then for penalty fee, and default interest, if this is the case, and, lastly, for interest and principal, in that order.

4.      The accounts of Lender shall be prima facie evidence of any amount, which the Borrower may owe from time to time to Lender pursuant to this Agreement, except in case of manifest error.

5.      The Borrower is not entitled to assign any of the rights or obligations arising out of this Agreement.

6.      Lender shall at all times be entitled to set-off all and any claims the Lender group has on the Borrower under this Agreement against any counterclaims of the Borrower.

7.      This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same agreement.

8.      This Agreement is subject to the laws of United States and, to the extent possible without conflicting with American laws, to the laws of the Grand-Duchy of Luxembourg. Jurisdiction is given to the Courts of the State of Florida, United States, and any claims arising under the present Agreement must thus be submitted to the Courts of the State of Florida, United States.

9.      This Agreement shall become effective when executed and delivered by Lender and the Borrower, and shall be binding in all respects upon the parties and their respective successors.

3.      This DISBURSEMENT shall be repaid in accordance with the terms of this Notice of Drawdown and the Agreement, and we hereby irrevocably confirm our interest in receiving such funds at your earliest convenience.

Kind regards,

**LGN INTERNATIONAL LLC**
By: Jacob Gitman

**Accepted and agreed:**

**PRUDENT INVESTMENT FUND SICAV SIF**
By: Dennis Klemming / Alfred Neimke

Witnesses:

1. _____     2. _____
Name:                                    Name:
I.D.:                                    I.D.:

**Exhibit A**

## MASTER LOAN AGREEMENT 004-123118 USD
### TERMS AND CONDITIONS

**1.    DRAWDOWN AND PURPOSE**

1.    Subject to the provisions of the Agreement, the Borrower has the right to request to borrow Advances in the maximum aggregate amount of the Facility, after Lender has received a notice from the Borrower ("Notice of Drawdown"), in conformity with Exhibit B hereto (by email or telefax or be confirmed in writing if so requested by the counterparty), indicating the proposed Date of Drawdown, the amount of the Advance and the Interest Period, which notice, once given, shall be binding and irrevocable.

3.    The Facility will be available to the Borrower throughout the term of the Agreement. The amount of any Advance shall not exceed the Facility amount, considering all Disbursements made under the Agreement.

**2.    INTEREST**

1.    Any Loan amount received under the Agreement shall carry an adjustable annual interest as per the following terms:

A)    A fixed monthly simple interest presently of 1,375% equal to a simple annual interest in USD of sixteen and a half per cent (16,5%) until the Loan is repaid, canceled or extended. This monthly interest may be reset to a higher level upon mutual agreement between Lender and Borrower on the last Luxembourg Banking Friday of each calendar month.

B)    The interest will be calculated on the principal and also on the accumulated interests for NAV purposes.

2.    Interest shall be payable on each Interest Payment Date.

3.    If any Interest Payment Date would fall on a day which is not a Business Day then such interest period shall be extended to the next succeeding Business Day unless such Business Day falls on another calendar month, in which case such interest period shall end on the immediately preceding Business Day.

**3.    REPAYMENT**

1.    Interest Payment Date: A date when the Borrower shall pay the Lender the interest owed as per specific request at such time by the Lender. The Lender may request a partial or full payment of Interest owed up to such Interest Payment Date as determined by the Lender according to the terms of this Agreement. Each payment will take place within 72 hours after receiving a payment demand for the

interest amount due from the Lender. Such payments shall be made to the account indicated by the Lender in this document.

2.    Principal Payment Date: The Borrower may prepay and the Lender may request a partial or full repayment of the Loan in accordance to the loan agreements as early as the Borrower or Lender chooses. The Lender should be given advance notice of at least seven (7) Business Days if the Borrower decides to repay any portion of the principal amount earlier then at the end of the calendar year period as of the Effective Date. The Loan is fully repayable at the end of the term unless the Lender gives the Borrower a written notice ten (10) days before the end of the one-year term thus causing an extension. The loan can then be renewed for a period of one year with the same terms and conditions as in this loan agreement.

3.    Any repayment that is received by the Lender in accordance with items 1 and 2 above is first categorized as an interest payment against the outstanding loan amount of this Agreement and subsequently as a payment against the principal notional amount outstanding against this Agreement, as per the applicable Call Notice Request Form, according to Exhibit C hereto.

4.    The Borrower should be informed weekly, by any business Thursday in Luxembourg, of any such request of repayment of any part of the principal amount and the associated interest linked to this specific withdrawal request. The Borrower shall upon receiving such repayment request initiate a transfer within ten (10) days following the date of the withdrawal request. Such payments should be made to the account indicated by the Lender in this document.

5.    All sums payable to the Lender hereunder shall be paid free and clear of any withholding taxes.

6.    The Facility is not revolving. Any amount repaid to Lender may not be re-borrowed.

7.    All payments shall be made on the Interest Payment Dates and Principal Payment Dates, as applicable, no later than at 12:00 noon (Florida, United States time) in lawful currency of the United States of America (in freely transferable United States Dollars), in immediately available same day funds, through the closing of a currency exchange agreement for credit to the following account of Lender (or at such other place or bank account as may be notified by Lender):

| | |
|---|---|
| USD Correspondent details | NAME: BANK OF AMERICA NA, NEW YORK |
| | SWIFT / BIC: BOFAUS3N |
| Beneficiary Bank | NAME: ABN AMRO BANK (Luxembourg) S.A. |
| | SWIFT/ BIC: BIC: ABNALU2A |
| Account details of the Fund | NAME: PRUDENT INVESTMENT FUND S.A. SICAV SIF |
| | IBAN: LU91 3550 1115 1784 0002 |

## 4.    CONDITIONS PRECEDENT

1.    The obligations of Lender hereunder are subject to the condition that Lender shall have received, in a form and substance satisfactory to it, prior to the first loan disbursement:

a.   Certified copies of the Borrower's incorporation documents including all amendments thereto;

b.   Copies of all resolutions, authorizations, approvals, consents, licenses and legislation, if any, necessary or appropriate for entering into and performance under the Agreement by the Borrower; and

c.   A copy of the signatures of those persons authorized to execute this Agreement on behalf of the Borrower and of the persons authorized to sign or dispatch all notices, certificates and other documents on behalf of the Borrower in connection with this Agreement.

2.   Borrower shall, at its own expense, provide for the translation into English, by a sworn translator, of all documents mentioned above which may not be directly written and issued in the English language, and shall have the same delivered to Lender upon request of the Lender.

## 5.   REPRESENTATIONS

The Borrower represents to Lender, prior to signing of this Agreement and prior to the drawing under the Facility, that:

a.   The Borrower has been validly incorporated and is validly existing under the laws of the United States of America and has all requisite corporate powers to carry on its business.

b.   The Borrower has all power and have obtained all the necessary approvals to enter into and perform its obligations under this Agreement and will take all the necessary actions to obtain, and to maintain valid all authorizations, approvals and consents of and/or registrations with all governmental and regulatory authorities in the United States of America or any political subdivision thereof as shall be necessary or appropriate under the laws thereof in connection with the entrance into and performance of this Agreement by the Borrower.

c.   Borrower is not in breach of or default under any agreement, document or other obligation to which it is a party or by which it is bound and no such agreement, document or other obligation will be contravened by the Borrower entering into this Agreement or by borrowing hereunder or performing any of its obligations hereunder.

d.   No litigation, arbitration or administrative proceedings before or of any court, tribunal or governmental authority is presently pending or, to the best of the knowledge and belief of the Borrower, threatened against the Borrower or any of its respective assets which might adversely affect the Borrower's financial condition or the ability of the Borrower to perform their respective obligations hereunder and no such proceedings is presently pending or, to the best of the knowledge and belief of the Borrower, threatened to enjoin or restrain the execution or performance of this Agreement, or in any manner to question the laws and proceedings under which this Agreement is to be executed, performed or enforced, and none of the said laws and proceedings have been repealed, revoked or rescinded in whole or in part.

e.   The Borrower has filed or delivered all tax returns which it is required by Law to file or deliver and has paid all taxes, assessments, fees and other governmental charges assessed against it or upon any of its properties, assets, income or franchises, and the Borrower is not in default in the payment of any taxes which is not disclosed in the financial statement referred to in paragraph (f) below.

f.   The Borrower's audited financial statements (including the income statement and balance sheet) for the year ended the year prior to the execution date of this Agreement have been prepared on a basis consistently applied and give a true and fair view of the results of its operations for that year and the state of its affairs at that date, and in particular accurately disclose all the Borrower's liabilities (actual or contingent).

g.   There has been no material adverse change in the Borrower's financial condition since the date referred to in paragraph (f) above.

h.   All information furnished by the Borrower in connection with the Facility is true, accurate and correct in all material respects and does not contain any untrue statement, nor omit to state any fact the omission of which makes the statements therein misleading in the light of the circumstances under which they were made, all expressions of expectation, intention, belief and opinion contained therein were honestly made on reasonable grounds after due and careful inquiry by the Borrower, and the Borrower has fully disclosed in writing to Lender all facts relating to the Borrower which the Borrower knows or should reasonably know and which are material for disclosure to Lender in the context of this Agreement.

i.   Each of the above representations and warranties will be correct and complied with in all material respects so long as any sum remains to be lent or remains payable under this Agreement as if repeated then by reference to the then existing circumstances, except that the reference to accounts in paragraph (f) above shall be construed as a reference to the then latest available annual accounts of the Borrower.

## 6.   UNDERTAKINGS/COVENANTS

The Borrower hereby procures towards Lender that, as long as the Facility or any part thereof remains outstanding or any other sum is payable under this Agreement, that:

a.   it will provide Lender with its annual (consolidated if any) audited financial statements, as soon as available and in any event no later than 120 (one hundred and twenty) days after closing of the relevant accounts for the relevant year. Furthermore, the Borrower shall provide Lender with such other information, which Lender may reasonably request from time to time;

b.   the Borrower will promptly (but in any case, no later than three days after it has become aware of such event) notify Lender of the occurrence of an Event of Default and provide Lender with

full details of any steps which it is taking, or is considering taking, in order to remedy or mitigate the effect of the Event of Default or otherwise in connection with it;

c.   the Borrower's obligations hereunder and under each document to be executed by the Borrower hereunder rank and will rank at least *pari passu*, in priority of payment and in all other respects, with all other unsecured and unsubordinated indebtedness of the Borrower;

d.   The Borrower shall also be responsible for procuring the translation of this Agreement into Portuguese by a sworn translator and register such document with a Public Register of Documents of its domicile within 20 (twenty) days of the execution of the same, providing Lender with a registered copy of it;

e.   The Borrower shall not without the prior written consent of Lender and with regard to any other transactions with similar nature, terms and conditions:

    (a)   create or permit to subsist any charge, mortgage, pledge, security interest or any other right of a third party in respect of (i) any of its present or future property, and/or (ii) any of its present or future other assets;

    (b)   sell, barter or otherwise alienate (including, without limitation, through any sale and leaseback and other off-balance transaction) any of its property or other assets, except for a sale or transfer for full value in the normal course of business of assets as mentioned under (a) (ii);

    (c)   guarantee or incur liability in any other way for the obligations and/or debts of third parties, whether due or not due, absolute or contingent; and the Borrower shall procure that none of its present or future subsidiaries or companies in which the Borrower holds or will hold the majority of the shares, will create any security interest or incur liability as described in the first part of this item and that such subsidiaries or companies shall accept the foregoing as their own obligation; and

## 7.   EVENTS OF DEFAULT

1.   The total outstanding principal sum of the Loans under the Facility together with accrued interest and any other charges due by the Borrower to Lender under this Agreement will become due and payable, without giving notice or observing any other formality, upon occurrence of any of the following events, in which case the Borrower will no longer be entitled to make any Drawdown under this Agreement:

a.   the Borrower shall default in the due payment of principal, interest, arrangement fee or any other amount payable hereunder on the respective due date;

b.   the Borrower shall default in the due performance or observance of any other provision contained in this Agreement and such default shall not be rectified within a period of 5 (five) days after Lender shall have given the defaulting party written notice of such default;

c.   the Borrower changes, or threatens to change, ceases or threatens to cease business as presently conducted other than in the normal course of business or sells, transfers or otherwise alienates the whole or any substantial part of its property or assets, including revenues, whether by one transaction or a series of transactions, related or not, without the prior written consent of Lender;

d.   the Borrower shall be unable, or admit in writing its inability to pay its debts as they mature, make an assignment for the benefit of creditors, or commit any act of bankruptcy, or any encumbrance takes possession or any order relating to dissolution, liquidation, bankruptcy or insolvency or for the appointment of a liquidator or receiver or judicial administrator or trustee or the levy of any execution shall be passed, commenced or made with respect to it or any of its assets;

e.   any adverse event or change shall have occurred in the economic or financial situation of the Borrower from which Lender shall conclude in its reasonable opinion, after having made the necessary investigations and after having notified the Borrower of the result of such investigations, that the ability of the Borrower to fulfil its obligations under this Agreement has been materially impaired;

f.   if the country in which the Borrower has its principal office announces or enters into rescheduling or restructuring of its debts, unless the Borrower's ability, as the case may be, to service and repay the Facility, shall remain unaffected thereby;

g.   a distress or execution or writ of seizure and sale or attachment is levied upon or issued against any of the property or assets of the Borrower representing a substantial part of such property or asset, which is not discharged within 14 (fourteen) days thereof;

h.   this Agreement, or any provision thereof is or becomes or is claimed to be, for any reason, invalid or unenforceable or at any time it is unlawful or impossible for the Borrower to perform any of its obligations hereunder or it is unlawful or impossible for Lender to exercise any of its rights hereunder;

j.   the change of Borrower's majority control without the prior specific written consent of Lender.

2.   If, pursuant to the above, the Loan becomes fully due and payable, then, and at any time thereafter, the Lender may, by written notice to the Borrower, call for repayment of the Loan on such date as the Lender may specify in such notice whereupon the same shall become due and payable on such date together with any other sums then owed by the Borrower hereunder. The Lender also has priority over the equity investors in any future bankruptcy process in regard to receiving the repayment of what is owed to the Lender in accordance to the terms of this agreement.

3.      In the event that the Facility should become immediately due and payable as aforesaid, the Borrower will indemnify Lender for all losses, costs or expenses incurred by Lender, other than arising from gross negligence of willful misconduct. The determination of Lender (setting forth the basis of computation of such losses) shall, in absence of manifest error, be conclusive.

4.      Borrower expressly and irrevocably agrees with Lender, in view of the provision of item 1.(c) above, that all amounts owed by Borrower to any of the companies belonging to the Lender Group in view of agreements, contracts, obligations or operations other than the present one, regardless of the nature, conditions or original payment term of such other agreements, contracts, obligations or operations, shall also become immediately due and payable in the event of anticipated maturity of this Agreement, and Lender, or the interested company of the Lender Group, may, at its own discretion, take any and all measures deemed necessary to enforce its rights and its/their immediate payments, either against the Borrower, or against any possible guarantors thereto.

## 8.     PLEDGE OF ASSETS

1.      The obligation of the Borrower to repay any Loan to the Lender under this Agreement shall be guaranteed by the pledge of any and all other assets held by the Borrower.

2.      The Borrower hereby undertakes and commits to executing the relevant Quota Pledge Agreement and all other related ancillary pledge documents and agreements, as well as providing for the necessary registrations, signatures and actions within United States, as to make such pledges fully valid and enforceable against the Borrower, upon request in written by the Lender, within the timeframe required by the Lender in said written request.

**Exhibit B**

**NOTICE OF DRAWDOWN**

São Paulo, [____].

**PRUDENT INVESTMENT FUND SICAV SIF ("Lender")**
**PRUDENT DIVERSIFIED CORPORATE LENDING FUND**
2 Boulevard de la Foire
Luxembourg L-1528
Luxembourg,
Attn.:   Mr. Dennis Klemming

Ref:      Notice of Drawdown under the Loan Agreement

Dear Sir,

1.      We refer to article 2.1 of the Operating Agreement for Disbursement of Funds (the "Agreement"), executed by and between **LGN INTERNATIONAL LLC** and Lender on December 14, 2018. TERMS DEFINED IN THE AGREEMENT ARE USED HEREIN AS THEREIN DEFINED, UNLESS OTHERWISE DEFINED HEREIN.

2.      This is to formally request a DISBURSEMENT to be effected under the terms of the Agreement, as follows:

> Amount:                           US [____]
> Date of Drawdown:           [____]
> Term:                              [____] months
> Maturity Date:                  [____]
> Interest:                          16,5% a.a.
> Transfer instructions:

| Beneficiary Bank: | Bank of America, USA |
|---|---|
| Beneficiary Bank Swift: | BOFAUS3N |
| Beneficiary Name: | LGN International LLC |
| Beneficiary Account Number: | 898064683387 |

IN WITNESS WHEREOF the parties hereto, acting through their duly authorized representatives, have executed this Agreement on December 14, 2018 superseding and replacing for any and all legal purposes all prior documents and agreements, either in written or not, relating to this loan arrangement between the parties.

Lender:

**PRUDENT INVESTMENT FUND SICAV SIF**
By: Dennis Klemming / Alfred Neimke

Borrower:

**LGN INTERNATIONAL LLC**
By: Jacob Gitman

Witnesses:

1. _____          2. _____
Name:                               Name:
I.D.:                               I.D.:

**Exhibit C**

**CALL NOTICE REQUEST FORM**

Luxembourg, [_____].

Reference: PRUDENT DIVERSIFIED CORPORATE LENDING FUND

**LGN INTERNATIONAL LLC ("Borrower")**

1111 Kane Concourse, 518, Bay Harbor Island, 33154
Florida, United States of America

Attn.:   Mr. Jacob Gitman / Larry Gitman

Ref:   Notice of repayment under the Loan Agreement:

Dear Sir,

1.       We refer to article 4.3 of the Master Loan Agreement USD (the "Agreement"), executed by and between **PRUDENT INVESTMENT FUND SICAV SIF** and Borrower on December 14, 2018. TERMS DEFINED IN THE AGREEMENT ARE USED HEREIN AS THEREIN DEFINED, UNLESS OTHERWISE DEFINED HEREIN.

2.       This is to formally request a REPAYMENT to be effected under the terms of the Agreement, as follows:

| | |
|---|---|
| Currency: | [_____] |
| Amount: | [_____] |
| Date of repayment request: | [_____] |
| Bank Details for the Lender: | |

| | |
|---|---|
| Name of Correspondent Bank: | Bank of America NA, New York |
| Correspondent Bank Swift: | BOFAUS3N |
| Beneficiary Bank: | ABN Amro Bank (Luxembourg) S.A. |
| Beneficiary Bank Swift: | ABNALU2A |
| Beneficiary Name: | Prudent Investment Fund S.A. SICAV SIF – Diversified Corporate Lending |
| Beneficiary Account Number: | LU91 3550 1115 1784 0002 |

Signed by:

**PRUDENT INVESTMENT FUND SICAV SIF**
(two board members of the Prudent Investment Fund)

# COMPOSITE EXHIBIT A.8

## OPERATING AGREEMENT FOR DISBURSEMENT OF FUNDS
### 104-123118 USD

By this agreement:

**(i) PRUDENT INVESTMENT FUND SICAV SIF,** (Prudent Investment Fund: Prudent Diversified Corporate Lending Fund) with registered office at 2 Boulevard de la Foire, Luxembourg L-1528, Luxembourg, herein represented by its Directors named and signed below (hereinafter referred to simply as "<u>PIF</u>", "<u>Investor</u>" or "<u>Lender</u>");

**(ii) SINAI HOLDINGS LLC,** limited liability company headquartered at 1111 Kane Concourse, 518, Bay Harbor Island, Florida 33154, United States, with the following FEI Number: 81-2831878 and Florida Document Number of L16000106080, herein represented by its statutory administrators named and signed below (hereinafter referred to simply as "Sinai" or "<u>Borrower</u>" and, together with PIF, the "<u>Parties</u>");

WHEREAS:

a. PIF wishes to make a certain amount of monies, funds and financial resources available to SINAI through loans or capital injections into certain investment platforms and funds advised by SINAI (the "<u>Disbursements</u>"); and

b. the Parties want to regulate the options, rules and conditions applicable to such disbursements.

HAVE AGREED TO EXECUTE THE PRESENT 'OPERATING AGREEMENT FOR DISBURSEMENT OF FUNDS' (the "<u>Agreement</u>"), WHICH WILL BE GOVERNED BY THE FOLLOWING CLAUSES AND CONDITIONS, RELATING TO ANY LOAN ARRANGEMENTS BETWEEN THE PARTIES:

## ARTICLE 1. <u>DEFINITIONS</u>

In this Agreement and its Exhibits, the following expressions, except where there is a specific provision to the contrary or where the context otherwise requires, have the following meanings:

"<u>Advance</u>" means any amount, limited to the Facility amount, drawn by the Borrower in accordance with the provisions of this Agreement.

"<u>Business Day</u>" means any day (other than a Saturday or Sunday) on which banks and foreign exchange markets are open in New York and such other place where any payment is required to be made or any act is required to be performed hereunder.

"<u>Date of Drawdown</u>" means the date on which a drawdown is made pursuant to Article 2 of this Agreement.

"<u>Interest Payment Date</u>" means the date coincident to each Principal Repayment Date.  In the event that an Interest Payment Date shall be a day that is not a Business Day, then the Interest Payment Date shall be the next succeeding day that is a Business Day.

"<u>Interest Period</u>"  Interest Period means the period commencing on (and including) the applicable Date of Drawdown and ending on (but not including) the first Interest Payment Date thereafter, and then each succeeding period commencing on (and including) the last day of the preceding Interest Period and ending on (but not including) the next succeeding Interest Payment Date.

"<u>Facility</u>"  means the aggregate amount of Disbursements made available by Lender to Borrower according to this Agreement, as described in item 2.2 of this Agreement.

"<u>Principal Repayment Dates</u>" means the repayment dates specified as such by the Borrower in the Notice of Drawdown.

"<u>Tax</u>" or "<u>Taxes</u>" shall include all present and future taxes, levies, imposts, duties, charges, fees, deductions and withholdings and any restrictions or conditions resulting in a charge.

"<u>Term</u>"                         means that the Master Loan Agreement will expire on December 31, 2019.

For the purpose of this Agreement all interest, charges and so forth will be computed on the basis of a year of 360 days and the actual number of days elapsed.

## ARTICLE 2. DISBURSEMENT OPTIONS

1.  The Parties hereby agree that, as mutually accepted between the Parties in each applicable case, the Disbursements may take place through (i) direct loans from the Lender to the Borrower ("<u>Loans</u>"), (ii) direct investments from PIF into credit rights investment funds or other kind of investment funds or platforms, in all cases serviced and/or advised by SINAI ("<u>Investments</u>"), or (iii) any other financial arrangement mutually defined in written by the Parties.

2. The Disbursements shall have a maximum aggregate amount of US$ [10,000,000.00 (ten million] United States Dollars) ("<u>Facility</u>"), considering all Disbursements made according to the alternatives described under item 2.1 above.

## ARTICLE 3. LOANS

1. In case of any Disbursement to be made through Loans, Lender grants to the Borrower, who declares to have accepted from Lender, an advised and uncommitted credit in the amount of the Facility, which shall be subject to the terms and conditions set forth in Exhibit A hereto.

**ARTICLE 4. INVESTMENTS**

1. Any and all Disbursements made through Investments shall be implemented and completed upon direct capital injections effected by PIF into credit rights investment funds or other kind of investment funds and platforms specifically agreed upon by the Parties.

2. Each such Investment shall be made in compliance with the Federal Reserve and evidenced through the execution, by PIF and/or its local representative, of the relevant subscription note (*Boletim de Subscrição*) or corresponding document related to the respective fund being invested in, according to the applicable regulation.

**ARTICLE 5. TAXES**

The Borrower shall pay all taxes, if any, which will be levied as withholding tax and which Lender can't set off as advance levy with taxes due by other reasons, as well as the costs of the enforcement of this Agreement. Costs of enforcement include the costs of legal assistance incurred.

**ARTICLE 6. COMMUNICATIONS AND NOTICES**

All notices and communications made hereunder by either party to the other, shall be in writing in the English language, by email or by telefax or be confirmed in writing at addresses stated at the opening of page 1 if so requested by the counterparty, or to such other addresses as may from time to time be notified in writing by either party to the other.

**ARTICLE 7. MISCELLANEOUS**

1. In respect of this Agreement and its implementation the Borrower irrevocably waives to the extent possible any claim it may now or at any time have to immunity of any kind as to court or arbitration proceedings and the enforcement of any awards, sentences, judgments, injunctions, decrees or court orders legally given or made in connection with such proceedings.

2. No failure to exercise and no delay in exercising, on the part of Lender, any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege preclude any other or future exercises of any other right, power or privilege. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law.

3. All payments to be made by the Borrower under this Agreement shall be made to Lender in United States Dollars at the account, which Lender may from time to time indicate. These payments made by the Borrower hereunder are considered to be firstly for costs and expenses, then for penalty fee, and default interest, if this is the case, and, lastly, for interest and principal, in that order.

4. The accounts of Lender shall be prima facie evidence of any amount, which the Borrower may owe from time to time to Lender pursuant to this Agreement, except in case of manifest error.

5. The Borrower is not entitled to assign any of the rights or obligations arising out of this Agreement.

6. Lender shall at all times be entitled to set-off all and any claims the Lender group has on the Borrower under this Agreement against any counterclaims of the Borrower.

7. This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same agreement.

8. This Agreement is subject to the laws of United States and, to the extent possible without conflicting with American laws, to the laws of the Grand-Duchy of Luxembourg. Jurisdiction is given to the Courts of the State of Florida, United States, and any claims arising under the present Agreement must thus be submitted to the Courts of the State of Florida, United States.

9. This Agreement shall become effective when executed and delivered by Lender and the Borrower and shall be binding in all respects upon the parties and their respective successors.

IN WITNESS WHEREOF the parties hereto, acting through their duly authorized representatives, have executed this Agreement on December 14, 2018 superseding and replacing for any and all legal purposes all prior documents and agreements, either in written or not, relating to this loan arrangement between the parties.

Lender:

**PRUDENT INVESTMENT FUND SICAV SIF**
By: Dennis Klemming / Alfred Neimke

Borrower:

**SINAI HOLDINDS LLC**
By: Jacob Gitman / Alex Slobodsky

Witnesses:

1.
Name: Name:
I.D.: I.D.:

2.

<u>Exhibit A</u>

### MASTER LOAN AGREEMENT 104-123118 USD
### TERMS AND CONDITIONS

## 1. <u>DRAWDOWN AND PURPOSE</u>

1. Subject to the provisions of the Agreement, the Borrower has the right to request to borrow Advances in the maximum aggregate amount of the Facility, after Lender has received a notice from the Borrower ("<u>Notice of Drawdown</u>"), in conformity with <u>Exhibit B</u> hereto (by email or telefax or be confirmed in writing if so requested by the counterparty), indicating the proposed Date of Drawdown, the amount of the Advance and the Interest Period, which notice, once given, shall be binding and irrevocable.

3. The Facility will be available to the Borrower throughout the term of the Agreement. The amount of any Advance shall not exceed the Facility amount, considering all Disbursements made under the Agreement.

## 2. <u>INTEREST</u>

1. Any Loan amount received under the Agreement shall carry an adjustable annual interest as per the following terms:

A) A fixed simple annual interest in USD of seventeen per cent (17%) until the Loan is repaid, canceled or extended. This monthly interest may be reset to a higher level upon mutual agreement between Lender and Borrower on the last Luxembourg Banking Friday of each calendar month.

B) The interest will be calculated on the principal and also on the accumulated interests for NAV purposes.

2. Interest shall be payable on each Interest Payment Date.

3. If any Interest Payment Date would fall on a day which is not a Business Day then such interest period shall be extended to the next succeeding Business Day unless such Business Day falls on another calendar month, in which case such interest period shall end on the immediately preceding Business Day.

## 3. <u>REPAYMENT</u>

1. <u>Interest Payment Date</u>: A date when the Borrower shall pay the Lender the interest owed as per specific request at such time by the Lender. The Lender may request a partial or full payment of Interest owed up to such Interest Payment Date as determined by the Lender according to the terms of this Agreement. Each payment will take place within 72 hours after receiving a payment demand for the interest amount due from the Lender. Such payments shall be made to the account indicated by the Lender in this document.

2. Principal Payment Date: The Borrower may prepay, and the Lender may request a partial or full repayment of the Loan in accordance to the loan agreements as early as the Borrower or Lender chooses. The Lender should be given advance notice of at least seven (7) Business Days if the Borrower decides to repay any portion of the principal amount earlier then at the end of the calendar year period as of the Effective Date. The Loan is fully repayable at the end of the term unless the Lender gives the Borrower a written notice ten (10) days before the end of the one-year term thus causing an extension. The loan can then be renewed for a period of one year with the same terms and conditions as in this loan agreement.

3. Any repayment that is received by the Lender in accordance with items 1 and 2 above is first categorized as an interest payment against the outstanding loan amount of this Agreement and subsequently as a payment against the principal notional amount outstanding against this Agreement, as per the applicable Call Notice Request Form, according to Exhibit C hereto.

4. The Borrower should be informed weekly, by any business Thursday in Luxembourg, of any such request of repayment of any part of the principal amount and the associated interest linked to this specific withdrawal request. The Borrower shall upon receiving such repayment request initiate a transfer within ten (10) days following the date of the withdrawal request. Such payments should be made to the account indicated by the Lender in this document.

5. All sums payable to the Lender hereunder shall be paid free and clear of any withholding taxes.

6. The Facility is not revolving. Any amount repaid to Lender may not be re-borrowed.

7. All payments shall be made on the Interest Payment Dates and Principal Payment Dates, as applicable, no later than at 12:00 noon (Florida, United States time) in lawful currency of the United States of America (in freely transferable United States Dollars), in immediately available same day funds, through the closing of a currency exchange agreement for credit to the following account of Lender (or at such other place or bank account as may be notified by Lender):

USD Correspondent details NAME: BANK OF AMERICA NA, NEW YORK
SWIFT / BIC: BOFAUS3N
Beneficiary Bank NAME: ABN AMRO BANK (Luxembourg) S.A.
SWIFT/ BIC: BIC: ABNALU2A
Account details of the Fund NAME: PRUDENT INVESTMENT FUND S.A. SICAV SIF
IBAN: LU91 3550 1115 1784 0002

## 4. CONDITIONS PRECEDENT

1. The obligations of Lender hereunder are subject to the condition that Lender shall have received, in a form and substance satisfactory to it, prior to the first loan disbursement:

a. Certified copies of the Borrower's incorporation documents including all amendments thereto;

b. Copies of all resolutions, authorizations, approvals, consents, licenses and legislation, if any, necessary or appropriate for entering into and performance under the Agreement by the Borrower; and

c. A copy of the signatures of those persons authorized to execute this Agreement on behalf of the Borrower and of the persons authorized to sign or dispatch all notices, certificates and other documents on behalf of the Borrower in connection with this Agreement.

2. Borrower shall, at its own expense, provide for the translation into English, by a sworn translator, of all documents mentioned above which may not be directly written and issued in the English language, and shall have the same delivered to Lender upon request of the Lender.

## 5. **REPRESENTATIONS**

The Borrower represents to Lender, prior to signing of this Agreement and prior to the drawing under the Facility, that:

a. The Borrower has been validly incorporated and is validly existing under the laws of the United States of America and has all requisite corporate powers to carry on its business.

b. The Borrower has all power and have obtained all the necessary approvals to enter into and perform its obligations under this Agreement and will take all the necessary actions to obtain, and to maintain valid all authorizations, approvals and consents of and/or registrations with all governmental and regulatory authorities in the United States of America or any political subdivision thereof as shall be necessary or appropriate under the laws thereof in connection with the entrance into and performance of this Agreement by the Borrower.

c. Borrower is not in breach of or default under any agreement, document or other obligation to which it is a party or by which it is bound and no such agreement, document or other obligation will be contravened by the Borrower entering into this Agreement or by borrowing hereunder or performing any of its obligations hereunder.

d. No litigation, arbitration or administrative proceedings before or of any court, tribunal or governmental authority is presently pending or, to the best of the knowledge and belief of the Borrower, threatened against the Borrower or any of its respective assets which might adversely affect the Borrower's financial condition or the ability of the Borrower to perform their respective obligations hereunder and no such proceedings is presently pending or, to the best of the knowledge and belief of the Borrower, threatened to enjoin or restrain the execution or performance of this Agreement, or in any manner to question the laws and proceedings under which this Agreement is to be executed, performed or enforced, and none of the said laws and proceedings have been repealed, revoked or rescinded in whole or in part.

e. The Borrower has filed or delivered all tax returns which it is required by Law to file or deliver and has paid all taxes, assessments, fees and other governmental charges assessed against it or upon any of its properties, assets, income or franchises, and the Borrower is not in default in the payment of any taxes which is not disclosed in the financial statement referred to in paragraph (f) below.

f. The Borrower's audited financial statements (including the income statement and balance sheet) for the year ended the year prior to the execution date of this Agreement have been prepared on a basis consistently applied and give a true and fair view of the results of its operations for that year and the state of its affairs at that date, and in particular accurately disclose all the Borrower's liabilities (actual or contingent).

g. There has been no material adverse change in the Borrower's financial condition since the date referred to in paragraph (f) above.

h. All information furnished by the Borrower in connection with the Facility is true, accurate and correct in all material respects and does not contain any untrue statement, nor omit to state any fact the omission of which makes the statements therein misleading in the light of the circumstances under which they were made, all expressions of expectation, intention, belief and opinion contained therein were honestly made on reasonable grounds after due and careful inquiry by the Borrower, and the Borrower has fully disclosed in writing to Lender all facts relating to the Borrower which the Borrower knows or should reasonably know and which are material for disclosure to Lender in the context of this Agreement.

i. Each of the above representations and warranties will be correct and complied with in all material respects so long as any sum remains to be lent or remains payable under this Agreement as if repeated then by reference to the then existing circumstances, except that the reference to accounts in paragraph (f) above shall be construed as a reference to the then latest available annual accounts of the Borrower.

## 6. UNDERTAKINGS/COVENANTS

The Borrower hereby procures towards Lender that, as long as the Facility or any part thereof remains outstanding or any other sum is payable under this Agreement, that:

a. it will provide Lender with its annual (consolidated if any) audited financial statements, as soon as available and in any event no later than 120 (one hundred and twenty) days after closing of the relevant accounts for the relevant year. Furthermore, the Borrower shall provide Lender with such other information, which Lender may reasonably request from time to time;

b. the Borrower will promptly (but in any case, no later than three days after it has become aware of such event) notify Lender of the occurrence of an Event of Default and provide Lender with full details of any steps which it is taking, or is considering taking, in order to remedy or mitigate the effect of the Event of Default or otherwise in connection with it;

c. the Borrower's obligations hereunder and under each document to be executed by the Borrower hereunder rank and will rank at least *pari passu,* in priority of payment and in all other respects, with all other unsecured and unsubordinated indebtedness of the Borrower;

d. The Borrower shall also be responsible for procuring the translation of this Agreement into Portuguese by a sworn translator and register such document with a Public Register of Documents of its domicile within 20 (twenty) days of the execution of the same, providing Lender with a registered copy of it;

e. The Borrower shall not without the prior written consent of Lender and with regard to any other transactions with similar nature, terms and conditions:

(a) create or permit to subsist any charge, mortgage, pledge, security interest or any other right of a third party in respect of (i) any of its present or future property, and/or (ii) any of its present or future other assets;

(b) sell, barter or otherwise alienate (including, without limitation, through any sale and leaseback and other off-balance transaction) any of its property or other assets, except for a sale or transfer for full value in the normal course of business of assets as mentioned under (a) (ii);

(c) guarantee or incur liability in any other way for the obligations and/or debts of third parties, whether due or not due, absolute or contingent; and the Borrower shall procure that none of its present or future subsidiaries or companies in which the Borrower holds or will hold the majority of the shares, will create any security interest or incur liability as described in the first part of this item and that such subsidiaries or companies shall accept the foregoing as their own obligation; and

## 7. EVENTS OF DEFAULT

1. The total outstanding principal sum of the Loans under the Facility together with accrued interest and any other charges due by the Borrower to Lender under this Agreement will become due and payable, without giving notice or observing any other formality, upon occurrence of any of the following events, in which case the Borrower will no longer be entitled to make any Drawdown under this Agreement:

a. the Borrower shall default in the due payment of principal, interest, arrangement fee or any other amount payable hereunder on the respective due date;

b. the Borrower shall default in the due performance or observance of any other provision contained in this Agreement and such default shall not be rectified within a period of 5 (five) days after Lender shall have given the defaulting party written notice of such default;

c. the Borrower changes, or threatens to change, ceases or threatens to cease business as presently conducted other than in the normal course of business or sells, transfers or otherwise alienates the whole or any substantial part of its property or assets, including revenues, whether by one transaction or a series of transactions, related or not, without the prior written consent of Lender;

d. the Borrower shall be unable, or admit in writing its inability to pay its debts as they mature, make an assignment for the benefit of creditors, or commit any act of bankruptcy, or any encumbrance takes possession or any order relating to dissolution, liquidation, bankruptcy or insolvency or for the

appointment of a liquidator or receiver or judicial administrator or trustee or the levy of any execution shall be passed, commenced or made with respect to it or any of its assets;

e. any adverse event or change shall have occurred in the economic or financial situation of the Borrower from which Lender shall conclude in its reasonable opinion, after having made the necessary investigations and after having notified the Borrower of the result of such investigations, that the ability of the Borrower to fulfil its obligations under this Agreement has been materially impaired;

f. if the country in which the Borrower has its principal office announces or enters into rescheduling or restructuring of its debts, unless the Borrower's ability, as the case may be, to service and repay the Facility, shall remain unaffected thereby;

g. a distress or execution or writ of seizure and sale or attachment is levied upon or issued against any of the property or assets of the Borrower representing a substantial part of such property or asset, which is not discharged within 14 (fourteen) days thereof;

h. this Agreement, or any provision thereof is or becomes or is claimed to be, for any reason, invalid or unenforceable or at any time it is unlawful or impossible for the Borrower to perform any of its obligations hereunder or it is unlawful or impossible for Lender to exercise any of its rights hereunder;

j. the change of Borrower's majority control without the prior specific written consent of Lender.

2. If, pursuant to the above, the Loan becomes fully due and payable, then, and at any time thereafter, the Lender may, by written notice to the Borrower, call for repayment of the Loan on such date as the Lender may specify in such notice whereupon the same shall become due and payable on such date together with any other sums then owed by the Borrower hereunder. The Lender also has priority over the equity investors in any future bankruptcy process in regard to receiving the repayment of what is owed to the Lender in accordance to the terms of this agreement.

3. In the event that the Facility should become immediately due and payable as aforesaid, the Borrower will indemnify Lender for all losses, costs or expenses incurred by Lender, other than arising from gross negligence of willful misconduct. The determination of Lender (setting forth the basis of computation of such losses) shall, in absence of manifest error, be conclusive.

4. Borrower expressly and irrevocably agrees with Lender, in view of the provision of item 1.(c) above, that all amounts owed by Borrower to any of the companies belonging to the Lender Group in view of agreements, contracts, obligations or operations other than the present one, regardless of the nature, conditions or original payment term of such other agreements, contracts, obligations or operations, shall also become immediately due and payable in the event of anticipated maturity of this Agreement, and Lender, or the interested company of the Lender Group, may, at its own discretion, take any and all measures deemed necessary to enforce its rights and its/their immediate payments, either against the Borrower, or against any possible guarantors thereto.

## 8. PLEDGE OF ASSETS

1. The obligation of the Borrower to repay any Loan to the Lender under this Agreement shall be guaranteed by the pledge of any and all other assets held by the Borrower.

2. The Borrower hereby undertakes and commits to executing the relevant Quota Pledge Agreement and all other related ancillary pledge documents and agreements, as well as providing for the necessary registrations, signatures and actions within United States, as to make such pledges fully valid and enforceable against the Borrower, upon request in written by the Lender, within the timeframe required by the Lender in said written request.

**Exhibit B**

**NOTICE OF DRAWDOWN**

São Paulo, [＿＿].

**PRUDENT INVESTMENT FUND SICAV SIF ("Lender")**
**PRUDENT DIVERSIFIED CORPORATE LENDING FUND**
2 Boulevard de la Foire
Luxembourg L-1528
Luxembourg,
Attn.: Mr. Dennis Klemming

Ref: Notice of Drawdown under the Loan Agreement

Dear Sir,

1. We refer to article 2.1 of the Operating Agreement for Disbursement of Funds (the "Agreement"), Master Loan Agreement, executed by and between **SINAI HOLDINDS LLC,** and Lender on December 14, 2018. TERMS DEFINED IN THE AGREEMENT ARE USED HEREIN AS THEREIN DEFINED, UNLESS OTHERWISE DEFINED HEREIN.

2. This is to formally request a DISBURSEMENT to be effected under the terms of the Agreement, as follows:

> Amount: US [＿＿]
> Date of Drawdown: [＿＿]
> Term: [＿] months
> Maturity Date: [＿＿]
> Interest: 17% a.a.
> Transfer instructions:

| Beneficiary Bank: | Bank of America |
|---|---|
| Beneficiary Bank Swift: | BOFAUS3N |
| Beneficiary Name: | Sinai Holdings LLC |
| Beneficiary Account Number: | 898076931043 |

3. This DISBURSEMENT shall be repaid in accordance with the terms of this Notice of Drawdown and the Agreement, and we hereby irrevocably confirm our interest in receiving such funds at your earliest convenience.

Kind regards,

SINAI HOLDINDS LLC
By: Jacob Gitman / Alex Slobodsky

Accepted and agreed:

PRUDENT INVESTMENT FUND SICAV SIF
By: Dennis Klemming / Alfred Neimke

Witnesses:

1. _____        2.   _____
Name: Name:
I.D.: I.D.:

**Exhibit C**

**CALL NOTICE REQUEST FORM**

Luxembourg, [____].

Reference: PRUDENT DIVERSIFIED CORPORATE LENDING FUND

**SINAI HOLDINGS LLC  ("Borrower")**
1111 Kane Concourse, 518, Bay Harbor Island, 33154
Florida, United States of America

Attn.: Mr. Jacob Gitman / Larry Gitman

Ref: Notice of repayment under the Loan Agreement:

Dear Sir,

1. We refer to article 4.3 of the Master Loan Agreement USD (the "Agreement"), executed by and between **PRUDENT INVESTMENT FUND SICAV SIF** and Borrower on December 14, 2018. TERMS DEFINED IN THE AGREEMENT ARE USED HEREIN AS THEREIN DEFINED, UNLESS OTHERWISE DEFINED HEREIN.

2. This is to formally request a REPAYMENT to be effected under the terms of the Agreement, as follows:

Currency: [____]
Amount: [____]
Date of repayment request: [____]
Bank Details for the Lender:

| | |
|---|---|
| Name of Correspondent Bank: | Bank of America NA, New York |
| Correspondent Bank Swift: | BOFAUS3N |
| Beneficiary Bank: | ABN Amro Bank (Luxembourg) S.A. |
| Beneficiary Bank Swift: | ABNALU2A |
| Beneficiary Name: | Prudent Investment Fund S.A. SICAV SIF – Diversified Corporate Lending |
| Beneficiary Account Number: | LU91 3550 1115 1784 0002 |

Signed by:

**PRUDENT INVESTMENT FUND SICAV SIF**
(two board members of the Prudent Investment Fund)

# COMPOSITE EXHIBIT B.1

## TECHNOCON INTERNATIONAL

| Date | Amount INFLOWS | OUTFLOWS |
|------|----------------|----------|
| 11/26/2018 | $235,000.00 | |
| 4/23/2019 | $390,000.00 | |
| 4/29/2019 | $360,000.00 | |
| 4/30/2019 | $390,000.00 | |
| 8/19/2019 | $900,000.00 | |
| 8/27/2019 | $1,000,000.00 | |
| 9/10/2019 | $500,000.00 | |
| 5/3/2021 | $500,000.00 | |
| 6/1/2021 | $1,000,000.00 | |
| 7/13/2021 | $1,000,000.00 | |
| 14-08-2018 | | ($1,000,170.94) |
| 13-02-2018 | | ($1,000,185.63) |
| 05-04-2018 | | ($1,000,184.16) |
| 23-04-2018 | | ($1,000,184.04) |
| 31-07-2018 | | ($1,000,175.81) |
| 18-12-2017 | | ($1,000,147.42) |
| 06-11-2017 | | ($1,000,145.88) |
| 03-07-2018 | | ($500,175.01) |
| 29-08-2018 | | ($1,500,175.08) |
| 13-06-2018 | | ($1,000,176.87) |

| Conclusion | | |
|------------|---|---|
| Total outflows mapped so far | | ($10,001,720.84) |
| Total inflows mapped so far | | $6,775,000.00 |

| Remaining balance | ($13,994,664.37) |
|-------------------|-------------------|

## Test - Assumption FIFO

Interest Rate  17%
**Daily rate  0.04658%**

| | | |
|---|---|---|
| Principals as at | 11/6/2017 | ($1,000,145.88) |
| Interest due as at : | 11/6/2017 | 0 |
| | | |
| Principals as at | 12/18/2017 | ($2,000,293.30) |

| | | |
|---|---|---|
| Interest due as at: | 12/18/2017 | ($19,564.50) |
| Principals as at | 2/13/2018 | ($3,000,478.93) |
| Interest due as at: | 2/13/2018 | ($72,668.17) |
| Principals as at | 4/5/2018 | ($4,000,663.09) |
| Interest due as at: | 4/5/2018 | ($143,939.82) |
| Principals as at | 4/23/2018 | ($5,000,847.13) |
| Interest due as at: | 4/23/2018 | ($177,479.63) |
| Principals as at | 6/13/2018 | ($6,001,024.00) |
| Interest due as at: | 6/16/2018 | ($296,266.88) |
| Principals as at | 7/3/2018 | ($6,501,199.01) |
| Interest due as at: | 7/3/2018 | ($352,166.83) |
| Principals as at | 7/31/2018 | ($7,501,374.82) |
| Interest due as at: | 7/31/2018 | ($436,949.59) |
| Principals as at | 8/14/2018 | ($8,501,545.76) |
| Interest due as at: | 8/14/2018 | ($485,862.66) |
| Principals as at | 8/29/2018 | ($10,001,720.84) |
| Interest due as at: | 8/27/2018 | ($545,257.02) |
| Accrued Interest until | 4/22/2018 | ($1,644,624.25) |
| Principals as at | 4/22/2019 | ($10,001,720.84) |
| Interest due as at: | 4/22/2019 | ($2,189,881.27) |
| Principals payments as at | 4/23/2019 | $0.00 |
| Interest payments as at | 4/23/2019 | 625,000.00 € | $625,000.00 |
| Principals as at | 4/23/2019 | ($10,001,720.84) |
| Interest due as at: | 4/21/2019 | ($1,564,881.27) |
| Accrued Interest until | 4/29/2019 | ($1,592,831.29) |
| Principals as at | 4/29/2019 | ($10,001,720.84) |

| Label | Date | Amount | Amount |
|---|---|---|---|
| Interest due as at: | 4/29/2019 | ($1,592,831.29) | |
| Principals payments as at | 4/29/2019 | $0.00 | $750,000.00 |
| Interest payments as at | 4/29/2019 | 750,000.00 | |
| Principals as at | 4/30/2019 | ($10,001,720.84) | |
| Interest due as at: | 4/30/2019 | ($842,831.29) | |
| Accrued Interest until | 8/18/2019 | ($1,355,248.22) | |
| Principals as at | 8/18/2019 | ($10,001,720.84) | |
| Interest due as at: | 8/18/2019 | ($1,355,248.22) | |
| Principals payments as at | 8/19/2019 | $0.00 | $900,000.00 |
| Interest payments as at | 8/19/2019 | 900,000.00 € | |
| Principals as at | 8/19/2019 | ($10,001,720.84) | |
| Interest due as at: | 8/19/2019 | ($455,248.22) | |
| Accrued Interest until | 8/26/2019 | ($487,856.57) | |
| Principals as at | 8/26/2019 | ($10,001,720.84) | |
| Interest due as at: | 8/26/2019 | ($487,856.57) | |
| Principals payments as at | 8/27/2019 | $512,143.43 | $1,000,000.00 |
| Interest payments as at | 8/27/2019 | 487,856.57 € | |
| Principals as at | 8/27/2019 | ($9,489,577.41) | |
| Interest due as at: | 8/27/2019 | $0.00 | |
| Accrued Interest until | 9/9/2019 | ($57,457.44) | |
| Principals as at | 9/9/2019 | ($9,489,577.41) | |
| Interest due as at: | 9/9/2019 | ($57,457.44) | |
| Principals payments as at | 9/10/2019 | $442,542.56 | $500,000.00 |
| Interest payments as at | 9/10/2019 | 57,457.44 € | |
| Principals as at | 9/10/2019 | ($9,047,034.85) | |
| Interest due as at: | 9/10/2019 | $0.00 | |

| Label | Date | Amount | Amount 2 |
|---|---|---|---|
| Accrued Interest until | 5/2/2021 | ($2,528,212.48) | |
| Principals as at | 5/2/2021 | ($9,047,034.85) | |
| Interest due as at: | 5/2/2021 | ($2,528,212.48) | |
| Principals payments as at | 5/3/2021 | $0.00 | $1,000,000.00 |
| Interest payments as at | 5/3/2021 | 1,000,000.00 € | |
| Principals as at | 5/3/2021 | ($9,047,034.85) | |
| Interest due as at: | 5/3/2021 | ($1,528,212.48) | |
| Accrued Interest until | 5/31/2021 | ($1,646,195.73) | |
| Principals as at | 5/31/2021 | ($9,047,034.85) | |
| Interest due as at: | 5/31/2021 | ($1,646,195.73) | |
| Principals payments as at | 6/1/2021 | $0.00 | $1,000,000.00 |
| Interest payments as at | 6/1/2021 | 1,000,000.00 € | |
| Principals as at | 6/1/2021 | ($9,047,034.85) | |
| Interest due as at: | 6/1/2021 | ($646,195.73) | |
| Accrued Interest until | 7/12/2021 | ($818,956.91) | |
| Principals as at | 7/12/2021 | ($9,047,034.85) | |
| Interest due as at: | 7/12/2021 | ($818,956.91) | |
| Principals payments as at | 7/13/2021 | $181,043.09 | $1,000,000.00 |
| Interest payments as at | 7/13/2021 | 818,956.91 € | |
| Principals as at | 7/13/2021 | ($8,865,991.76) | |
| Interest due as at: | 7/13/2021 | $0.00 | |
| Accrued Interest until | 12/6/2024 | ($5,128,672.61) | |
| Principals as at | 12/6/2024 | ($8,865,991.76) | |
| Interest due as at: | 12/6/2024 | ($5,128,672.61) | |
| **Remaining balance** | **12/6/2024** | **($13,994,664.37)** | |

## COMPOSITE EXHIBIT B.2

# LGN INTERNATIONAL

| Date | Amount | |
|---|---|---|
| | **INFLOWS** | |
| 4/23/2019 | $1,000,000.00 | |
| 5/3/2021 | $1,000,000.00 | |
| 6/1/2021 | $1,000,000.00 | |
| 11/17/2017 | $979,892.68 | |
| | **OUTFLOWS** | |
| 28-08-2017 | ($400,149.35) | |
| 22-06-2017 | ($350,139.65) | |
| 23-05-2017 | ($200,140.40) | |
| 19-04-2017 | ($1,100,134.20) | |
| 13-04-2017 | ($500,132.92) | |
| 12-07-2017 | ($500,143.35) | |
| 02-02-2016 | ($500,136.37) | |
| 20-03-2017 | ($600,134.68) | |
| 27-11-2015 | ($1,500,132.80) | |
| 09-10-2015 | ($1,000,140.78) | |
| 26-08-2015 | ($1,000,144.36) | |
| 15-09-2016 | ($1,000,140.41) | |
| 04-08-2016 | ($500,140.12) | |
| 19-07-2016 | ($600,137.90) | |
| 27-04-2016 | ($2,000,140.96) | |

| **Conclusion** | |
|---|---|
| Total outflows mapped so far | ($11,752,088.25) |
| Total inflows mapped so far | $3,979,892.68 |
| **Remaining balance as of 06/12/2024** | **($24,038,718.82)** |

| **Test - Assumption FIFO** | | |
|---|---|---|
| Interest Rate | 16.50% | |
| Daily rate | 0.04521% | |
| Principals as at | 8/26/2015 | ($1,000,144.36) |
| Interest due as at : | 8/26/2015 | 0 |
| Principals as at | 10/9/2015 | ($2,000,285.14) |

| | | |
|---|---|---|
| Interest due as at : | 10/9/2015 | ($19,893.28) |
| Interest due as at : | 11/27/2015 | ($64,200.97) |
| Principals as at | 11/27/2015 | ($3,500,417.94) |
| Interest due as at : | 2/2/2016 | ($170,220.48) |
| Principals as at | 2/2/2016 | ($4,000,554.31) |
| Interest due as at : | 4/27/2016 | ($323,940.41) |
| Principals as at | 4/27/2016 | ($6,000,695.27) |
| Interest due as at : | 7/19/2016 | ($549,089.78) |
| Principals as at | 7/19/2016 | ($6,600,833.17) |
| Interest due as at : | 8/4/2016 | ($596,832.79) |
| Principals as at | 8/4/2016 | ($7,100,973.29) |
| Interest due as at : | 9/15/2016 | ($731,654.01) |
| Principals as at | 9/15/2016 | ($8,101,113.70) |
| Interest due as at : | 3/20/2017 | ($1,412,813.41) |
| Principals as at | 3/20/2017 | ($8,701,248.38) |
| Interest due as at : | 4/13/2017 | ($1,507,215.99) |
| Principals as at | 4/13/2017 | ($9,201,381.30) |
| Interest due as at : | 4/19/2017 | ($1,532,173.16) |
| Principals as at | 4/19/2017 | ($10,301,515.50) |
| Interest due as at : | 5/23/2017 | ($1,690,506.05) |
| Principals as at | 5/23/2017 | ($10,501,655.90) |
| Interest due as at : | 6/22/2017 | ($1,832,925.76) |
| Principals as at | 6/22/2017 | ($10,851,795.55) |
| Interest due as at : | 7/12/2017 | ($1,931,037.89) |
| Principals as at | 7/12/2017 | ($11,351,938.90) |

| Description | Date | Amount | Payment |
|---|---|---|---|
| Principals as at | 8/28/2017 | ($11,752,088.25) | |
| Interest due as at : | 8/28/2017 | ($2,172,227.71) | |
| Accrued Interest until | 11/19/2017 | ($2,613,172.50) | |
| Principals as at | 11/19/2017 | ($11,752,088.25) | |
| Interest due as at : | 11/19/2017 | ($2,613,172.50) | |
| Principals payments as at | 11/20/2017 | $0.00 | $979,892.68 |
| Interest payments as at | 11/20/2017 | 979,892.68 € | |
| Principals as at | 11/20/2017 | ($11,752,088.25) | |
| Interest due as at : | 11/20/2017 | ($1,633,279.82) | |
| Accrued Interest until | 4/22/2019 | ($4,385,200.32) | |
| Principals as at | 4/22/2019 | ($11,752,088.25) | |
| Interest due as at : | 4/22/2019 | ($4,385,200.32) | |
| Principals payments as at | 4/23/2019 | $0.00 | $1,000,000.00 |
| Interest payments as at | 4/23/2019 | 1,000,000.00 € | |
| Principals as at | 4/23/2019 | ($11,752,088.25) | |
| Interest due as at : | 4/23/2019 | ($3,385,200.32) | |
| Accrued Interest until | 5/2/2019 | ($7,316,515.32) | |
| Principals as at | 5/2/2021 | ($11,752,088.25) | |
| Interest due as at : | 5/2/2021 | ($7,316,515.32) | |
| Principals payments as at | 5/3/2021 | $0.00 | $1,000,000.00 |
| Interest payments as at | 5/3/2021 | 1,000,000.00 € | |
| Principals as at | 5/3/2021 | ($11,752,088.25) | |
| Interest due as at : | 5/3/2021 | ($6,316,515.32) | |
| Accrued Interest until | 5/31/2021 | ($6,465,267.78) | |

| | | | |
|---|---|---|---|
| Principals as at | 5/31/2021 | | ($11,752,088.25) |
| Interest due as at : | 5/31/2021 | | ($6,465,267.78) |
| Principals payments as at | 6/1/2021 | | $0.00 |
| Interest payments as at | 6/1/2021 | | 1,000,000.00 € |
| Principals as at | 6/1/2021 | | ($11,752,088.25) |
| Interest due as at : | 6/1/2021 | | ($5,465,267.78) |
| Accrued interest until | 12/6/2024 | | ($12,286,630.57) |
| Principals as at | 12/6/2024 | $1,000,000.00 | ($11,752,088.25) |
| Interest due as at : | 12/6/2024 | | ($12,286,630.57) |
| **Remaining balance** | **12/6/2024** | | **($24,038,718.82)** |

# COMPOSITE EXHIBIT B.3

## SINAI HOLDINGS

| Date | Amount | INFLOWS | |
|------|--------|---------|---|
| 4/23/2019 | 245,000.00 | | |
| 4/23/2019 | 370,000.00 | | |
| 4/23/2019 | 385,000.00 | | |
| 6/3/2019 | 1,900,000.00 | Principal + Interest | |
| 7/9/2019 | 3,000,000.00 | Principal + Interest | |
| 8/21/2019 | 1,200,000.00 | Interest | |
| 9/4/2019 | 1,000,000.00 | Principal | |
| 4/29/2021 | 1,081,078.00 | | |
| | | OUTFLOWS | |
| 28-08-2018 | ($1,500,175.94) | | |
| 21-06-2018 | ($1,000,174.06) | | |
| 13-06-2018 | ($1,000,176.87) | | |
| 28-09-2018 | ($1,500,174.02) | | |
| 30-07-2018 | ($1,000,175.64) | | |
| 13-04-2019 | ($500,185.16) | | |
| 16-02-2018 | ($1,000,188.32) | | |
| 14-08-2018 | ($1,000,170.94) | | |

| Remaining balance | $9,181,078.00 | | ($2,534,991.56) |
|-------------------|---------------|---|------------------|

**Preliminary comments**

| Total outflows mapped so far | ($8,501,420.95) |
|------------------------------|-----------------|
| Total inflows mapped so far | $9,181,078.00 |

**Test - Assumption FIFO**

Interest Rate 17%
Daily rate 0.04658%

| | | |
|---|---|---|
| Principals as at | 2/16/2018 | ($1,000,188.32) |
| Interest due as at : | 2/16/2018 | 0 |
| Principals as at | 4/13/2018 | ($1,500,373.48) |
| Interest due as at : | 4/13/2018 | ($26,087.10) |
| Principals as at | 6/13/2018 | ($2,500,550.35) |
| Interest due as at : | 6/13/2018 | ($68,714.15) |

| Description | Date | Amount | Total |
|---|---|---|---|
| Principals as at | 6/21/2018 | ($3,500,724.41) | |
| Interest due as at : | 6/21/2018 | ($78,031.27) | |
| Principals as at | 7/30/2018 | ($4,500,900.05) | |
| Interest due as at : | 7/30/2018 | ($141,619.77) | |
| Principals as at | 8/14/2018 | ($5,501,070.99) | |
| Interest due as at : | 8/14/2018 | ($173,064.42) | |
| Principals as at | 8/28/2018 | ($7,001,246.93) | |
| Interest due as at : | 8/28/2018 | ($208,934.41) | |
| Principals as at | 9/28/2018 | ($8,501,420.95) | |
| Interest due as at : | 9/28/2018 | ($310,020.91) | |
| Accrued Interest until | 4/22/2019 | ($1,125,691.49) | |
| Interest payments as at | 4/23/2019 | $0.00 | |
| Principals payments as at | 4/23/2019 | 1,000,000.00 € | $1,000,000.00 |
| Principals as at | 4/23/2019 | ($8,501,420.95) | |
| Interest due as at : | 4/23/2019 | ($125,691.49) | |
| Accrued Interest until | 6/2/2019 | ($284,074.13) | |
| Principals as at | 6/2/2019 | ($8,501,420.95) | |
| Interest due as at : | 6/2/2019 | ($284,074.13) | |
| Principals payments as at | 6/3/2019 | $1,615,925.87 | $1,900,000.00 |
| Interest payments as at | 6/3/2019 | 284,074.13 € | |
| Principals as at | 6/3/2019 | ($6,885,495.08) | |
| Interest due as at : | 6/3/2019 | ($112,243.00) | |
| Accrued Interest until | 7/8/2019 | $0.00 | |
| Principals as at | 7/8/2019 | ($6,885,495.08) | |
| Interest due as at : | 7/8/2019 | ($112,243.00) | |
| Principals payments as at | 7/9/2019 | $2,887,757.00 | $3,000,000.00 |

| | Date | Amount | Amount 2 |
|---|---|---|---|
| Interest payments as at | 7/9/2019 | 112,243.00 € | |
| Principals as at | 7/9/2019 | ($3,997,738.08) | |
| Interest due as at: | 7/9/2019 | $0.00 | |
| Accrued Interest until | 8/20/2019 | ($78,202.33) | |
| Principals as at | 8/20/2019 | ($3,997,738.08) | |
| Interest due as at: | 8/20/2019 | ($78,202.33) | |
| Principals payments as at | 8/21/2019 | $1,121,797.67 | $1,200,000.00 |
| Interest payments as at | 8/21/2019 | 78,202.33 € | |
| Principals as at | 8/21/2019 | ($2,875,940.41) | |
| Interest due as at: | 8/21/2019 | $0.00 | |
| Accrued Interest until | 9/3/2019 | ($17,413.23) | |
| Principals as at | 9/3/2019 | ($2,875,940.41) | |
| Interest due as at: | 9/3/2019 | ($17,413.23) | |
| Principals payments as at | 9/4/2019 | $1,000,000.00 | $1,000,000.00 |
| Interest payments as at | 9/4/2019 | $0.00 | |
| Principals as at | 9/4/2019 | ($1,875,940.41) | |
| Interest due as at: | 9/4/2019 | ($17,413.23) | |
| Accrued Interest until | 4/28/2021 | ($543,396.08) | |
| Principals as at | 4/28/2021 | ($1,875,940.41) | |
| Interest due as at: | 4/28/2021 | ($543,396.08) | |
| Principals payments as at | 4/29/2021 | $537,681.92 | $1,081,078.00 |
| Interest payments as at | 4/29/2021 | 543,396.08 € | |
| Principals as at | 9/4/2019 | ($1,338,258.49) | |
| Interest due as at: | 9/4/2019 | $0.00 | |
| Accrued Interest until | 12/6/2024 | ($1,196,733.07) | |

| | 12/6/2024 | ($1,338,258.49) |
|---|---|---|
| Principals as at | 12/6/2024 | |
| Interest due as at : | 12/6/2024 | ($1,196,733.07) |
| **Remaining balance** | **12/6/2024** | **($2,534,991.56)** |

# EXHIBIT C

# LGN International LLC

1111 Kane Concourse Suite 518 Bay Harbor Islands, FL, 33154, USA

Date: 6 March 2019

Prudent Investment Fund
2 Blvd de la Foire, L-1528,
Luxembourg

As of 31 December 2018, LGN International LLC confirms acceptance of liabilities for the loan issued by Prudent Investment Fund to Prudent Trading Company agreement MLA 005 - 123116 in amount of USD 2,150,000.00 plus accrued interest.

The above liability is accounted for in the financial statements of LGN International LLC.

Yours truly

Jacob Gitman
Technocon International Inc dba Alliance Metals

# COMPOSITE EXHIBIT D.1



## JACKSON LAW
### INTERNATIONAL
JUSTITIA OMNIBUS

August 23, 2024

Reply to:
bjackson@jacksonlawinternational.com

*__Via Regular U.S. Mail and Certified__*
*__Mail, Return Receipt Requested__*
Technocon International, Inc.
Mr. Larry Gitman, President
16051 Collins Avenue #401
Sunny Isles Beach, FL 33160

Dear Mr. Gitman:

This firm has been retained to represent the liquidator, Cèdric Schirrer, on behalf of the Luxembourg company PRUDENT INVESTMENT FUND SICAV SIF ("Prudent").

As you are aware, Prudent agreed to loan an aggregate sum of USD FIVE MILLION DOLLARS ($5,000,000.00) to Technocon International, Inc. ("Technocon") pursuant to a Master Loan Agreement and subsequent Operating Agreement as follows:

- **MASTER LOAN AGREEMENT 009-102417 USD** executed by Mr. Jacob Gitman and Mr. Larry Gitman on or about October 24, 2017 ('MLA"); and
- **OPERATING AGREEMENT FOR DISBURSEMENT OF FUNDS 009-123118 USD** executed by Mr. Jacob Gitman and Mr. Larry Gitman on or about December 14, 2018 ("Operating Agreement).

Pursuant to Section 8 of the MLA and  Section 7 of Exhibit A to the Operating Agreement, Technocon is in default.  The events of default are enumerated within the foregoing Sections and include, but are not limited to, default of payment, default of performance, and/or change of Technocon's majority control without prior specific written consent of Prudent.  While formal notice of default to Technocon is not required, please consider this letter notice of default.

To that end, demand is hereby made for Technocon to provide immediate payment of the principal and accrued interest due as of July 15, 2024, in the sum of USD $10,401,591.21.  You may make payment utilizing the wiring instructions attached hereto.

August 23, 2024
Page – 2 –

If payment is not received on or before August 30, 2024, my client has authorized me to pursue any and all available legal remedies.  If you have any questions, please let me know.

Best Regards,

Bonnie Jackson
Attorney at Law
JACKSON LAW INTERNATIONAL

Enclosure

cc:     *Via Regular U.S. Mail and Certified*
        *Mail, Return Receipt Requested*
        STG International, Inc.
        Registered Agent
        1111 Kane Concourse, Suite 518
        Bay Harbor Islands, FL 33154

cc:     *Via Email schirrer@sstlaw.lu*
        Cèdric Schirrer, liquidator
        SchirrerSchonsTritschler
        6, Avenue Guillaume
        L-1650 Luxembourg

## COMPOSITE EXHIBIT D.2



**JACKSON LAW**

**I N T E R N A T I O N A L**

JUSTITIA OMNIBUS

August 23, 2024

Reply to:
bjackson@jacksonlawinternational.com

***Via Regular U.S. Mail and Certified***
***Mail, Return Receipt Requested***
LGN International, LLC
Mr. Jacob Gitman, Manager
1111 Kane Concourse, Suite 518
Bay Harbor Islands, FL 33154

Dear Mr. Gitman:

This firm has been retained to represent the liquidator, Cèdric Schirrer, on behalf of the Luxembourg company PRUDENT INVESTMENT FUND SICAV SIF ("Prudent").

As you are aware, Prudent agreed to loan an aggregate sum of USD TWENTY MILLION DOLLARS ($20,000,000.00) to LGN International, LLC ("LGN") pursuant to a Master Loan Agreement and subsequent Operating Agreements as follows:

- **MASTER LOAN AGREEMENT 004-123115 USD** executed by Mr. Jacob Gitman and Mr. Arthur Moroz on or about December 31, 2015 ("MLA 2015");
- **MASTER LOAN AGREEMENT 004-123116 USD** executed by Mr. Jacob Gitman and Mr. Larry Gitman on or about December 31, 2016 ( "MLA 2016");
- **OPERATING AGREEMENT FOR DISBURSEMENT OF FUNDS 004-090117 USD** executed by Mr. Jacob Gitman and Mr. Larry Gitman on or about September 1, 2017;
- **OPERATING AGREEMENT FOR DISBURSEMENT OF FUNDS 004-123117 USD** executed by Mr. Jacob Gitman and Mr. Roman Faizulin on or about December 31, 2017;
- **OPERATING AGREEMENT FOR DISBURSEMENT OF FUNDS 004-123118 USD** executed by Mr. Jacob Gitman on or about December 31, 2018 (collectively "Operating Agreements").

Pursuant to Section 8 of the MLA 2015 and MLA 2016, as well as Section 7 of Exhibit A to each of the Operating Agreements, LGN is in default. The events of default are enumerated within the foregoing Sections and include, but are not limited to, default of payment, default of performance,

August 23, 2024
Page – 2 –

and/or change of LGN's majority control without prior specific written consent of Prudent. While formal notice of default to LGN is not required, please consider this letter notice of default.

To that end, demand is hereby made for LGN to provide immediate payment of the principal and accrued interest due as of July 15, 2024, in the sum of USD $25,092,847.73. You may make payment utilizing the wiring instructions attached hereto. If payment is not received on or before August 30, 2024, my client has authorized me to pursue any and all available legal remedies.

If you have any questions, please let me know.

Best Regards,

Bonnie Jackson
Attorney at Law
JACKSON LAW INTERNATIONAL

Enclosure

cc:     *Via Regular U.S. Mail and Certified*
        *Mail, Return Receipt Requested*
        Technocon International, Inc.
        Registered Agent
        1111 Kane Concourse, Suite 518
        Bay Harbor Islands, FL 33154

cc:     *Via Email schirrer@sstlaw.lu*
        Cèdric Schirrer, liquidator
        SchirrerSchonsTritschler
        6, Avenue Guillaume
        L-1650 Luxembourg

## COMPOSITE EXHIBIT D.3



**JACKSON LAW**

**INTERNATIONAL**

JUSTITIA OMNIBUS

August 23, 2024

Reply to:
bjackson@jacksonlawinternational.com

***Via Regular U.S. Mail and Certified***
***Mail, Return Receipt Requested***
Sinai Holdings, LLC
Mr. Jacob Gitman, Manager
1111 Kane Concourse, Suite 518
Bay Harbor Islands, FL 33154

Dear Mr. Gitman:

This firm has been retained to represent the liquidator, Cèdric Schirrer, on behalf of the Luxembourg company PRUDENT INVESTMENT FUND SICAV SIF ("Prudent").

As you are aware, Prudent agreed to loan an aggregate sum of USD TEN MILLION DOLLARS ($10,000,000.00) to Sinai Holdings, LLC ("Sinai") pursuant to an **OPERATING AGREEMENT FOR DISBURSEMENT OF FUNDS 104-123118 USD** executed by Mr. Jacob Gitman and Mr. Alex Slobodsky on or about December 14, 2018 ("Operating Agreement).

Pursuant to Section 7 of Exhibit A to the Operating Agreement, Sinai is in default. The events of default are enumerated within the foregoing Section and include, but are not limited to, default of payment, default of performance, and/or change of Sinai's majority control without prior specific written consent of Prudent. While formal notice of default to Sinai is not required, please consider this letter notice of default.

To that end, demand is hereby made for Sinai to provide immediate payment of the principal and accrued interest due as of July 15, 2024, in the sum of USD $836,941.03. You may make payment utilizing the wiring instructions attached hereto.

If payment is not received on or before August 30, 2024, my client has authorized me to pursue any and all available legal remedies.

August 23, 2024
Page – 2 –

If you have any questions, please let me know.

Best Regards,

Bonnie Jackson
Attorney at Law
JACKSON LAW INTERNATIONAL

Enclosure

cc:   *Via Regular U.S. Mail and Certified Mail, Return Receipt Requested*
      Technocon International, Inc.
      Registered Agent
      1111 Kane Concourse, Suite 518
      Bay Harbor Islands, FL 33154

cc:   *Via Email schirrer@sstlaw.lu*
      Cèdric Schirrer, liquidator
      SchirrerSchonsTritschler
      6, Avenue Guillaume
      L-1650 Luxembourg